THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Matthew Adkisson, an individual,<br><br>              Plaintiff,<br><br>    v.<br><br>Epik Holdings, Inc., a Washington Corporation; Epik Inc., a Washington Corporation; Masterbucks LLC, a Wyoming company; Robert W. Monster, an individual; and Brian Royce, an individual,<br><br>              Defendants. | No. 2:23-cv-00495-MJP<br><br>FIRST AMENDED COMPLAINT WITH JURY DEMAND |

In and for his First Amended Complaint, plaintiff Matthew Adkisson alleges as follows:

1.      This lawsuit is about a widespread and illegal fraudulent scheme—replete with misrepresentations, embezzlement, and misappropriation—being perpetrated by Defendants Epik Holdings, Inc. ("Epik Holdings"), Epik Inc., and Masterbucks LLC ("Masterbucks") (collectively, "Epik"), as well as Epik's founder Rob Monster ("Monster"), and Epik's current chief executive officer (CEO) Brian Royce ("Royce") (all collectively referred to as "Defendants"). Epik and its executive officers misappropriated funds from numerous consumers, hiding their illicit activity by securing payments from new victims to pay down old debts, and transferring money between the various Epik companies to further obfuscate their fraud.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

2.       Matthew Adkisson ("Adkisson" or "Plaintiff") is one of the many individuals that were subject to Defendants' illegal fraud.  In May 2022, Adkisson contacted Epik for what should have been a simple, straightforward domain name purchase.  During the transaction, Defendants made several misrepresentations, embezzled or misappropriated Adkisson's funds, and strung Adkisson along for months with false and empty promises of repayment.  Defendants have admitted liability but refuse to make Adkisson whole.  Adkisson brings this Complaint to recover what he is owed, and to ensure that this ongoing fraud against consumers is finally put to an end.

3.       After filing his complaint on March 31, 2023, numerous additional parties quickly emerged who confirmed the fraud committed on Adkisson was part of a larger fraudulent scheme designed to misuse consumers' funds including by, according to Epik's majority owner, Monster, applying them to Epik's business operations instead of being held in escrow, hiring and paying Royce and his friends as executives within Epik, and holding off other creditors in furtherance of Epik's pyramid scheme.

## PARTIES

4.       Adkisson is an individual residing in New York City, New York.

5.       Defendants Epik Holdings and Epik Inc. are both Washington corporations with the same principal place of business in Sammamish, Washington. On information and belief, Epik Holdings and Epik Inc. together offer domain name registrar, hosting, sales and related services.

6.       Defendant Masterbucks is a Wyoming company, with a principal place of business in Spokane, Washington. On information and belief, Masterbucks' sole governing member is Epik Holdings, of which Monster is the majority owner.  Masterbucks claims to offer services relating to domain name transactions.

7.       Monster is an individual residing in King County, Washington, and is the founder and majority owner of Epik.  On information and belief, Monster served as the Chief Executive Officer of Epik since its formation through September 2022, is currently the Chair of the Board

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

for Epik, and his principal residence is the same location as the principal place of business for Epik Holdings and Epik Inc.

8.     On information and belief, Royce is an individual residing in Houston, Texas. In September 2022, Royce replaced Monster as the CEO of Epik.

### JURISDICTION AND VENUE

9.     This Court has federal question jurisdiction of this action under 28 U.S.C. § 1331 because the action alleges violations of 15 U.S.C. § 1962. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

10.     This Court also has jurisdiction over this action under 28 U.S.C. § 1332, there being complete diversity of citizenship between the parties and the matter in controversy exceeding the sum or value of $75,000, exclusive of interest and costs.

11.     Personal jurisdiction over defendants Epik Holdings, Epik Inc. and Monster is proper because Monster is a resident of, and Epik Holdings and Epik Inc.'s principal place of business are in, Washington.

12.     As more fully set out below, personal jurisdiction is also proper over all Defendants because each regularly conducts business in Washington and this action arises out of or is related to the Defendants' conduct in the state. On information and belief, Masterbucks, whose sole member is a Washington corporation, regularly conducts business in Washington state and with Washington residents. Royce, as the CEO of the various Washington-based Epik entities, also regularly conducts business in Washington state and targeted at Washington consumers.

13.     Venue is proper in this District as to Epik Holdings, Epik Inc., and Monster under 28 U.S.C. § 1391(b)(1) because both defendants reside in this District. Likewise, venue is proper in this District as to Masterbucks because its sole member, Epik Holdings, resides in this District.

14.     Venue is also proper as to all Defendants in this District under 28 U.S.C. § 1391(b)(2) because, as set forth in more detail below, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Specifically, the fraudulent enterprise

FIRST AMENDED COMPLAINT (NO. 2:23-CV-
00495-MJP) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

and scheme alleged in this Complaint revolves around two Washington corporations based in this District and a fully owned subsidiary, their CEO, and the majority owner who is also a resident of this District.

## FACTS AND BACKGROUND

### Epik's Widespread Fraud

15.     Epik operates what it calls the "Epikverse" which involves a mix of services offered by various companies owned by Monster, including Epik Holdings, Epik Inc. and Masterbucks.

16.     The so-called "Epikverse" purports to offer a suite of services related to domain names, including registrar services (i.e., the registration of domain names), website hosting, escrow services relating to the purchase and sale of domain names, and privacy protection services (hiding registrant information).

17.     One of the primary services offered by Epik is the sale of domain names. Consumers can list domain names they own for sale through Epik. Then, if a party wants to buy the domain name, they are instructed to contact Epik to purchase that domain name. Epik claims to safely handle all components of this sale.

18.     When brokering the sale and purchase of a domain name, Epik claims to act as an escrow agent.

19.     When payment is held in escrow, it must be kept separate and strictly segregated from other funds and cannot be commingled. Escrow payments do not belong to the agent holding the payment, and they are only allowed to be paid out to a specified entity, for a specified purpose, or returned to the payor.

20.     The way the process is supposed to work is simple. In acting as an escrow agent for domain purchases, the purchaser sends payment to Epik to be held in escrow and the seller transfers the domain to be held in escrow by Epik. Then, when Epik has both the domain name and payment in escrow, it should release the domain name to the purchaser and the payment to the seller. That's how it is *supposed* to work. But through various disclosures, admissions, and

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

actions, it is now clear that Epik has been illegally misappropriating escrow funds to fund its own operations and its officers.

21.     In recent months, consumers started noticing the proceeds from their domain sales weren't being paid out.

22.     Apparently, that was because Epik had mounting debts from escrow payments or domain sales that it had misappropriated, and it was hoping it could hide those losses by using a potential new investment to repay the stolen escrow funds. To be clear, there should have been no need to replace the escrow funds *because escrow funds should not have been touched by Epik*, except to transfer the funds to the seller or reimburse the payor. That's how escrow accounts work.

23.     Epik's last hope at hiding their fraudulent scheme vanished when, according to Epik's recent court filing, the potential investment fell through, and the investor sought to divest their investment from Epik.

24.     When the monetary issues began popping up, consumers also began withdrawing their money from Epik. But Epik no longer had their money.

25.     Consumers came out in droves to complain about their missing money. Consumer reviews of their recent experiences with Epik are replete with stories with the same theme: they used Epik's escrow services, and Epik stole their money. In fact, the reviews on TrustPilot.com (https://www.trustpilot.com/review/epik.com) in the last several months are almost exclusively from consumers complaining of fraud committed by Epik, Monster and Royce. The complaints name both Monster and Royce as being personally involved. Some examples of such reviews—*all of which occurred after Royce became Epik's CEO*—are shown below.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51



**Luigi M Vigna**
1 review  ◎ IT

★☆☆☆☆                                                    Apr 7, 2023

**Brian Royce - The new Epik.com cancer**

Here's Luigi from DomainEmpire, the group who lost about $1.5M when Rob Monster
stole our funds last September and refused to refund us with multiple fancy excuses.
We had most of our funds converted in BTC and hosted at Masterbucks but last
October 2022 they've fraudolently converted them to USD and moved the balance to
the corresponding Epik accounts (we've funds under 4 diff. accounts there) w/out
asking for our previous authorization.

Recently we started using such funds to register/transfer few useless domains to Epik
just to spend a bit of such liquidity but wow ! Yesterday evening another surprise.
They've moved again all our funds from Epik to Masterbucks again w/out asking for
our authorization nor with a single word of explanation from their side

Another important news to report is the promose Brian ROyce did last December to
cover in full their debt towards us in January and asked us to wait patiently ... We did
so but today (after 4 months) still no refund and no news from these scammers.

Just one word: Stay away forever from Epik or you'll loose all your funds and probably
your domains will be at risk as well.

I've added a screenshot of one of our account balances at Masterbucks (we've other
3 accounts with a lower balance).

**Date of experience:** April 05, 2023



**Alex**
1 review  ◎ RU

★☆☆☆☆                                                    Mar 24, 2023

**They take the money and don't register the domain**

I've replenished my account to buy domains.
The first thing I did was buy a .com. The money was written off from my balance. But
the domain did not appear in my account.
I wrote to the support team. They told me that they have "temporary problems". And
the domain will be registered very soon. But they could not say when exactly.
Remember that the money they wrote off from my balance sheet!

The next day I registered a domain in the zone .org and the situation repeated.
I've already paid for two domains, but none of them are registered.
Nowhere on the site is information about what they have. This is a fraud of users!

**Date of experience:** March 20, 2023

FIRST AMENDED COMPLAINT (NO. 2:23-CV-
00495-MJP) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51



**Denys Demchyna**
2 reviews    ◎ UA

 ★★★★★                                              Mar 9, 2023

**Epik blocked my account with 10800$ on it**

Hi,

My account on Epik is blocked.

On my balance I have $10 800 which I have not been able to withdraw since October.

1. I have written dozens of letters to Epik Support, but the only answer - "please wait".
2. Tony several times guaranteed me that he will help to withdraw my funds! But for now he does not work in Epik anymore.
3. I have called Epik Support but now there are only robots answering my calls.

In December, when it was still possible to reach them by call, the Support advised me to withdraw my money by selling domains on Marketplace with losing 9% commission, to another person, so that person will have the possibility to withdraw money by Masterbucks wallet. I tried to do this with a friend of mine, but after they blocked our accounts.

Epik is the worst and unprofessional company I have ever worked with. They received my money, did not give me any opportunity to withdraw it, gave advice and tips and then blocked my account.

Date of experience: February 27, 2023



**Tochi**
1 review    ◎ NG

★★★★★                                              Apr 24, 2023

**They are shady they'll take your money and not register your domain**

I registered a domain name since 5 days they took my money and the domain wasn't added to my account. Their customer support is zero, they take days to respond to emails and sometimes they don't reply at all. Avoid them. Deal with them at your own risk. You'll lose your money and potential clients.

Date of experience: April 20, 2023



**Sujan**
2 reviews    ◎ BD

★★★★★                                              Jan 20, 2023

**Pending $9300 withdrawal requested from 13th Oct 2022**

03(three) month go i requested a withdrawal of my funds and Masterbucks still has not paid any amount.
I sold-out my site for medical treatment and re-invest another website. I was job less from corona 1st time.

They have my ID , bank details, and confirmed this is OK for a payout.

It's really disappointing with your process, so many date problems with masterbucks under maintenance now approval problems. here attached my pending report

Date of experience: October 14, 2022

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1



26.     There are dozens of similar complaints over just the last few months.  And at least one customer, DomainEmpire.com, claims that they have an unpaid balance of **$1,500,000**, which has apparently also gone missing.

27.     As these debts and consumer complaints quickly piled up, Epik started using payments from new consumers—which, again, were meant to be held in escrow—to pay down old debts.

28.     In other words, Epik and its executives including Monster and Royce tried to hide this illegal conduct with yet more illegal conduct.

29.     On information and belief, Epik has been using this method of comingling funds and using a newly received escrow funds to replace escrow funds that were previously misappropriated for years.

30.     In addition, in an attempt to buy themselves more time in paying their numerous debts, Epik began transferring money and payments between the various Epik companies.

31.     For instance, according to one consumer, on September 27, 2022—after Royce became Epik's CEO—she used Epik's purported "escrow" services through Epik's website, www.Epik.com, to sell a domain name for $100,000.  Again, the process should have been simple: the domain name would be put in escrow, and so would the payment.  Then, when both were secured in escrow, the domain and payment would be released to the entitled parties.  Instead, according to this consumer, her domain name was sold and the funds were provided to Epik, but

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 8

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

she never received her payment (a total of $91,000 after Epik's fees). And, after requesting her payments, Epik informed her it was transferred to Masterbucks (which is owned and operated by Epik Holdings). But apparently, Masterbucks did not have the funds either, and the funds were reportedly stuck in "processing" unable to be released. According to this consumer, "Brian Royce has had [the funds] on hold since September 27th [2022]."

32.    This hiding of money between the various Epik entities is but another example of Epik's continued obfuscation to perpetuate and hide their ongoing fraud. For instance, Luigi Vigna, another consumer reporting the fraudulent scheme noted that Epik moved his funds "from Epik to Masterbucks again [without] asking for our authorization nor with a single word of explanation from their side[.]" Based on numerous consumer complaints, this practice of taking consumer's funds and replacing them with "Masterbucks"—a fictional currency within the "Epikverse"—is part of Epik's fraudulent scheme to abscond with consumer's funds.

33.    Another consumer disclosed that after selling his domain name using Epik's purported escrow services, he was only able to withdraw the full $50,000 paid for the domain name that was purportedly kept in "escrow". While he was initially able to withdraw $12,000 of the $50,000, once Royce took control of Epik's finances the consumer was prevented from withdrawing the remaining funds. When the consumer contacted Epik regarding payment of his funds, he received multiple messages promising repayment as part of an apparent delay tactic to keep the consumer from taking further action to secure his funds.

34.    Epik's fraud is widespread, has likely been ongoing for years and has been exacerbated since Royce's tenure as CEO of Epik began.

35.    As one news article notes, "Epik was using money from both [Masterbucks and Epik's in-house escrow service] to fund its operations rather than keeping the funds in separate bank accounts." The article further claims that, despite claiming to offer escrow services, "[t]he company … didn't have an escrow license." *See* https://domainnamewire.com/2022/12/01/epik-continues-to-dig-out-from-financial-mess/.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

36.     Even though Epik represented that it offered escrow services, Monster has confirmed that Epik is not and was never a licensed escrow service.

37.     Royce also confirmed this misuse of escrow funds.  In an October 2022 podcast, Royce was asked whether escrow funds were commingled.  Royce confirmed this illegal activity, admitting publicly that "when [Royce] came on board, everything was, as of September 2--there was kind of a lot of comingling and the separation of operations wasn't there."

38.     Monster and Royce have been at the heart of this fraud.

39.     Monster has been the controlling party throughout the time Epik began their fraudulent scheme.  Monster owned all of the relevant business entities, and personally interacted with many of the consumers that Epik scammed.

40.     As the fraud perpetrated by Monster and Epik began to come to light, Epik placed Royce at the helm as CEO—and he now controls the companies, and the ongoing fraud. In other words, Royce, too, is complicit.

41.     Royce first began working with Monster and Epik in or around March 2022. He was quickly brought up to speed and integrated into Epik and soon became Epik's Executive Vice President of Operations.

42.     In or around August 2022, Royce made an appeal to become Epik's new CEO and Monster agreed. Royce became Epik's CEO effective September 1, 2022.

43.     Immediately upon becoming CEO, Royce took full control of Epik's bank accounts, funds, and all other finances. In other words, Royce decided who was paid what and when, including whether to pay back misappropriated consumer funds or to instead use those funds for purposes *other than* the purposes for which the consumers intended their funds be used. Royce chose the latter, including with respect to Plaintiff's funds.

44.     Upon his appointment as CEO, Royce began using the consumer funds Epik was meant to hold in escrow or to use for consumers' domain-related services (e.g., renewing consumer's domain names), for other purposes that the consumers had not approved or intended.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

On information and belief Royce began misusing those consumer funds to, among other things, pay himself salary and bonus, hire his friends to officer-level positions within Epik, and to pay off older debts from prior misuse of funds.

45.     Indeed, after Royce took over as CEO, Epik sent customers an e-mail acknowledging that "[w]hen new management took over Masterbucks, the balance was approximately 4.5 million dollars" but, moving funds around, they claimed to have paid off all but $800,000 of that debt.  That claim turned out to be false too.  Soon after, Royce admitted that they continued to discover additional debts, now amounting to at least $1.1 million.

46.     In September 2022, Royce also disabled the ability of consumers to withdraw their money from Masterbucks—effectively holding their money against their wishes, including Plaintiff's money. On information and belief, consumers like Plaintiff are still unable to withdraw their funds.

47.     According to Monster, after taking over, Royce had full control of the companies (though Monster still maintained majority ownership) and Royce "ran the company like a dictator."

**Adkisson's Purchase of the Domain Name**

48.     Before this massive web of fraud came to light, Adkisson contacted Epik to complete a simple domain name purchase.

49.     On May 11, 2022, Adkisson e-mailed Monster seeking to purchase the domain name <nourish.com> which was listed for sale through Epik.

50.     Monster responded that Epik was authorized to sell the domain name for "$300K net to seller, which means $327K gross at our 9% commission." Monster further claimed that he could complete the sale that day.

51.     Monster informed Adkisson that to complete the sale, Adkisson would need to use Epik's escrow services.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

52.     Adkisson agreed to pay the requested $327,000 and asked Monster to set up the escrow account.

53.     In response, Monster assured Adkisson that Epik's "escrow service is #1 in the industry" and that they further protect the buyer and seller of domain names because Epik is also "an accredited registrar" and so "take[s] actual delivery of the domain" during sales.  Adkisson relied on Monster's representation that Epik offered "escrow" services and as to the protections offered by Epik's purported escrow services.  But for these representations, Adkisson would not have proceeded with the transaction with Epik.

54.     Monster also claimed that the domain name seller wanted to be paid in crypto currency.  Monster instructed Adkisson that after Adkisson funded the escrow account, Epik would handle converting the payment to crypto currency to pay the seller.

55.     At the time, Epik Inc. and Epik Holdings provided an in-house escrow service named "Epik Escrow."  Monster directed Adkisson to use the Epik Escrow service in connection with Adkisson's domain name purchase.

56.     That day, May 11, 2022, Adkisson followed the directions provided by Monster and transferred $327,000 to Epik using the Epik Escrow service, to be held in escrow as Monster represented it would be (the "Escrow Funds").

57.     On its website, Epik explained how its escrow services worked:  "Epik will receive and hold funds from the Buyer, then receive and hold domain(s) from the Seller. Upon consent of both parties, Epik will deliver domain(s) to the Buyer and distribute the funds to the Seller's account."  Further, Epik represented that both the seller and buyer "have the right to cancel the transaction without penalties until the escrow is concluded. If the Buyer has already submitted payment, Epik will reimburse."

58.     Defendants were not licensed to act as an escrow agent or to perform escrow services as required under Washington law (RCW 18.44.021).

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

59. Despite Monster's claim that the transaction could be completed the same day payment was transferred, Adkisson did not receive the domain name that day. Indeed, Adkisson never received the domain name.

60. On June 1, 2022, Monster informed Adkisson that were some issues with the seller of the domain name, but that Epik was "working to get this done asap."

61. Defendants continued to string Adkisson along for months, repeatedly promising that they would deliver the domain name.

62. Royce became Epik's CEO on September 1, 2022 and immediately took full control of Epik's funds. Royce was also fully and personally informed as to Adkisson's transaction and the funds Adkisson's Escrow Funds which Epik was holding.

63. On November 14, 2022, and because the domain name had still not been transferred to Adkisson, Adkisson requested the return of his Escrow Funds. Royce responded by email and promised to continue to try to secure the domain name but further promised "if [that] does not work then we of course will return the funds." On information and belief, when Royce made this promise to "return the funds," he knew it to be false, that Epik did not intend to return the Escrow Funds to Adkisson, and that Epik was instead spending Adkisson's Escrow Funds for improper purposes. In reliance on Royce's express and unambiguous representation that his funds would be returned, Adkisson gave Epik additional time to secure the domain name or return his funds.

64. Nearly three weeks later, Defendants had still not secured the domain name nor returned Adkisson's Escrow Funds. On December 2, 2022, Adkisson explicitly stated that he would be ending the domain name purchase transaction and again requested that the Escrow Funds be returned.

65. Adkisson soon discovered that the Escrow Funds he had transferred to be held by Epik in escrow had not, as they were required to be, kept in a separate account pending the sale of the domain name. Instead, Defendants apparently used the Escrow Funds as their personal piggybank and misappropriated the entirety of Adkisson's $327,000 escrow payment, including

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

through Royce's use of the funds to pay himself salary and bonus, hire his friends into office positions within Epik, and to pay off older debts.

**Misappropriation of Adkisson's Escrow Funds**

66.     After Royce replaced Monster as the CEO of Epik he was made aware of the Adkisson's pending escrow transaction and Epik's outstanding debt to Adkisson by no later than September 4, 2022.

67.     On October 18, 2022, Royce informed Adkisson by text message that they "need[ed] to talk," but Royce claimed to be unavailable at that time.

68.     For the next six weeks, Adkisson continued to follow up with Royce attempting to get either the domain transferred to him, or his Escrow Funds returned. During that time, Royce started implementing delay tactics keep Adkisson from withdrawing his Escrow Funds. As part of those tactics, Royce sent multiple emails promising that he was continuing to work on securing the domain name, and that if he was not successful, Adkisson's funds would be returned.

69.     On December 2, 2022, Adkisson emailed Royce and Defendants to explicitly inform them that he would be ending the domain name purchase transaction and again requested that the Escrow Funds be returned.

70.     Finally, on December 6, 2022, Royce responded by text message to Adkisson's repeated messages about his Escrow Funds stating that "we are getting things sorted out and your funds will be returned [in] short order[.]" Still, no payment was forthcoming. This statement was false and Royce knew it was false when he made it as he never intended to pay Adkisson: Royce had control of Epik's finances and never planned to refund Adkisson. Adkisson relied on this statement by withholding from taking action to collect the monies owed to him, all while Defendants, including Monster, Royce and Epik, continued to spend the funds that belonged to Adkisson.

71.     On information and belief, despite Monster's and Epik's representations that Adkisson's funds would be held in escrow, and despite Monster's, Royce's and Epik's

FIRST AMENDED COMPLAINT (NO. 2:23-CV-
00495-MJP) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

representations that they would repay Adkisson his Escrow Funds, the Escrow Funds were instead comingled with Defendants' business and/or personal funds, and were used by Defendants for matters unrelated to Adkisson or the sale of the <nourish.com> domain name, including covering Epik's misappropriation of other consumers' escrow funds, paying other Epik creditors, paying Royce and Monster, and paying Royce's newly-hired friends in their officer level positions at Epik.

72.     On December 28, 2022, counsel for Adkisson sent Defendants a letter regarding the misappropriated funds.  In the letter, Adkisson informed Defendants that, based on conversations with Royce, "it appears that Epik has stolen the money, or embezzled the funds" and that the parties involved in this conduct "may be guilty of a criminal offense."

73.     On December 31, 2022, counsel for Epik responded to the letter by email.  Epik's counsel noted that they did not represent Monster, and that they advised Monster to retain his own counsel claiming that "Monster has no authority to act as an officer, employee, or agent of the company; he is merely a non-executive director and the majority stockholder."  Epik's counsel also requested "a deadline for payment so we can marshal resources" to resolve the matter.

74.     In a subsequent phone call, Epik, through its counsel, admitted that it owed Adkisson the $327,000 it had promised to hold in escrow, and that sometime after Adkisson wired the funds to Epik, it was misappropriated, embezzled or both.  In any case, Epik conceded that the Escrow Funds were no longer available.  Epik further claimed that the company was "cash strapped" and that Adkisson's Escrow Funds were used to pay other debts.

75.     In response, Adkisson requested repayment of his funds by January 6, 2023.  Epik did not refund Adkisson.  Instead, Epik emailed again claiming that it had begun discussions with Monster's counsel regarding "how to structurally remove Mr. Monster from having any voting power while still bearing the economic risk of his past acts and omissions" and "the possible source(s) of cash an[d] timing to fund the payment due your client."  They further claimed that "Epik and Mr. Royce are working on this in good faith with the intention of making your client whole."

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 15

162081250.1

76.     On January 11, 2023, Epik, through counsel, sent Adkisson a letter via email promising to repay Adkisson his escrow funds.  Specifically, the letter stated:  "On behalf of Epik Holdings, Inc., Epik shall pay the debt owed to Mr. Adkisson in two installments, one on January 12, 2023, in the amount of $20,000, and the other no later than January 31, 2023, in the amount of $307,000."  Adkisson accepted the proposal.

77.     On January 12, 2023, Monster paid Adkisson $20,000.  However, no further payments were made.

78.     On January 30, 2023—the day before Epik had promised to repay the remaining balance of the Escrow Fund to Adkisson—Epik informed Adkisson that Monster's counsel would be in touch regarding "[Monster's] plan for satisfying the claim."  This was directly contradictory to Epik's January 11 letter which "[o]n behalf of Epik Holdings, Inc." promised that Epik would repay the full debt by January 31, 2023.  On information and belief, it was Royce's decision, as the individual in charge of Epik's funds and finances, to not repay Adkisson.

79.     Adkisson reminded Epik of its binding agreement that *Epik* would repay the funds, and do so within the next day.  Epik did not respond and did not complete its promised repayment.  On information and belief, Epik knew, at the time it made this representation, that it did not intend to repay Adkisson.  Instead, it was just another example of the fraudulent misrepresentations being made to consumers like Adkisson and a ploy to delay Adkisson's recovery of his funds.

80.     On information and belief, Epik, Royce and Monster made similar promises to repay other consumers where Epik, Royce and Monster had misappropriated the consumers' funds, knowing the representations were false, and with the intent that the consumers would rely on those representations and so withhold from taking action to recover their funds. It appears numerous consumers relied on those false representations.

81.     On January 31, 2023, Monster contacted Adkisson.  He confirmed that the amount owed to Adkisson—$327,000—was not in dispute.  Further, Monster stated that since Royce became CEO of Epik, Monster "believe[d] the company has had ample opportunity to fund a

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

refund to Mr. Adkisson."  Monster identified several sources of funds available to Epik to repay Adkisson including a $1,000,000 loan, a $1,000,000 divestiture received by Epik in October 2022, and other assets "amount[ing to] more than $600,000 in cash."  Based on these claims, it appears that Epik's and Royce's representations that it was "cash strapped" and so unable to repay Adkisson were false, and Epik and Royce knew they were false when they made those representations.

82.     Monster further represented that "in the event that the Company does not, or will not settle the balance due of $307,000, I am committed to covering this personally, and doing so asap."

83.     No further payments have been made to Adkisson.

### Defendants Attempt to Sell Epik and Its Assets

84.     On information and belief, instead of paying back consumers the funds they stole, Royce, Monster, and Epik have been coordinating the sale of Epik's business and its assets in order for Royce and Monster to abscond with the sale proceeds leaving consumers holding the bag.

85.     After Adkisson filed his initial complaint, on May 5, 2023, Royce Tweeted regarding these sales efforts, classifying them as an "asset sale."

86.     In a subsequent phone call, Monster also confirmed that he, Royce and Epik were coordinating efforts to sell pieces of Epik, including its registrar and hosting services.

87.     Then, on May 12, 2023, Monster confirmed that he understood "that an asset sale is being finalized[.]"

88.     If an asset sale is completed, Epik intends to pay its creditors before repaying the consumers whose funds Defendants misappropriated.

89.     According to numerous consumer complaints, in the midst of this asset sale, Monster and Royce have been misappropriating consumers funds and refusing to transfer or renew domain names that Epik controls (but were purchased by consumers), likely in order to artificially inflate the value of Epik to increase the potential sales. On information and belief, this practice is

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 17

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

*on-going* and when a consumer pays Defendants to register a domain name, Defendants, through Epik, accept the payment but do not register the domain name for the consumer.

90. If Royce, Monster, and Epik are allowed to sell Epik or its assets, consumers like Adkisson are highly unlikely to be repaid for the funds that Royce, Monster, and Epik misappropriated.

### FIRST CAUSE OF ACTION
#### *Breach of Contract* (All Defendants)

91. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

92. In connection with the sale of the <nourish.com> domain name, Epik and Monster entered into a valid, enforceable and binding contract with Adkisson.

93. Based on Epik's and Monster's representations, Adkisson wired $327,000 to Epik to be held in escrow. In exchange, Epik and Monster promised to transfer the <nourish.com> domain name to Adkisson, and, in the event the domain could not be transferred, Epik was to return the funds to Adkisson.

94. Epik and Monster represented that Adkisson's funds would be held in escrow. As such, Epik was required to keep those funds separate from Defendants' business and personal accounts. Those funds could not be used for any matter other than the transfer of the <nourish.com> domain name, or were required to be returned to Adkisson.

95. Epik, Royce, and Monster also each separately agreed that Adkisson was entitled to his Escrow Funds and each promised to return Adkisson's funds.

96. As of at least September 1, 2022, Royce personally ran Epik's finances and controlled payments out of Epik. Royce repeatedly and falsely assured Adkisson that Adkisson's funds would be returned, even though Royce knew full well that Adkisson's funds had been or were being embezzled. Royce deliberately and willfully misled Adkisson.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162081250.1

97.     Monster, Royce and Epik had the ability to repay Adkisson the funds they admitted he was owed, but did not do so, opting instead to use Adkisson's money for other purposes.

98.     Epik, Royce and Monster's promises to hold Adkisson's funds in escrow and to repay Adkisson are valid and binding agreements. Epik, Royce and Monster breached their agreements with Adkisson, including but not limited to Royce's agreement to repay Adkisson. Epik did not transfer the <nourish.com> domain name to Adkisson. Nor did Epik, Monster or Royce return Adkisson's Escrow Funds. Epik, Monster and Royce also failed to keep Adkisson's funds in escrow, and instead either misappropriated and/or embezzled those funds.

99.     As a direct and proximate result of Defendants' breaches, Adkisson has been harmed and is entitled to an amount to be proven at trial, and in an amount no less than $307,000 plus interest.

## SECOND CAUSE OF ACTION--
### *Fraudulent Misrepresentation* (All Defendants)

100.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

101.     In connection with the purchase of the <nourish.com> domain name, Epik requested payment in the amount of $327,000 from Adkisson. Monster and Epik represented that Epik would serve as an escrow agent and maintain those funds in an escrow account, to be used only if the domain name was transferred to Adkisson, or to be returned to Adkisson. Monster and Epik intended Adkisson to rely on those representations.

102.     Based on those representations, Adkisson paid $327,000 to the purported Epik escrow account. Adkisson was harmed by such reliance: he did not receive the <nourish.com> domain name and did not receive repayment of escrow funds.

103.     Those representations were both material and false, and, at the time they were made, Monster and Epik knew those representations were false.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 19

162081250.1

104.     Adkisson's funds were never placed in and were not maintained in, an escrow account.  Instead, Adkisson's funds were used by Monster and/or Epik to settle separate debts or for other personal reasons, unrelated to Adkisson's purchase of the <nourish.com> domain name.

105.     Additionally, despite representing that they offered escrow services, Epik was not licensed to perform escrow services or act as an escrow agent as required by law.

106.     Adkisson relied on Monster's and Epik's representations regarding their ability to offer escrow services, believing their representations to be true, and was damaged by such reliance.

107.     After Adkisson's funds were misappropriated, Royce, Monster and Epik each represented that they would repay Adkisson the amounts owed.  These representations were also material and false, and Defendants knew they were false when they made them.

108.     Indeed, according to Monster, Royce and Epik had the funds available to repay Adkisson since at least September 2022, and knew of the debt to Adkisson, but chose not to do so. Defendants never intended to repay Adkisson and instead continued to string him along for months promising repayment.  Like they did *and continue to do* with numerous other consumers, Monster, Royce and Epik made several false and material representations that they would repay Adkisson intending that Adkisson rely on the representations and withhold taking action to collect his funds so that they could continue to misappropriate, embezzle, and spend his Escrow Funds and sell Epik or its assets.

109.     Adkisson relied on the representations that he would be repaid, believing them to be true, and refrained from taking immediate action to secure the return of his Escrow Funds. In doing so, Adkisson suffered losses including but not limited to lost interest and by paying legal counsel to continue to work with Defendants in securing the repayment. Additionally, by delaying Adkisson's efforts to recover his funds, Epik continued to spend his money and are in the process of an asset sale both of which will likely prevent Adkisson from recovering some or all of his funds.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

162081250.1

110.    Adkisson's reliance on Defendants' false representations has damaged Adkisson in an amount to be proven at trial and Adkisson is entitled to damages and injunctive relief.

### THIRD CAUSE OF ACTION
### *Breach of Fiduciary Duty* (All Defendants)

111.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

112.    An escrow agent owes a fiduciary duty to the parties to the escrow to conduct the transaction with scrupulous honesty, skill and diligence, and must comply strictly with the provisions of the escrow agreement.

113.    By promising to provide escrow services, to act as an escrow agent for Adkisson, and to hold Adkisson's funds in escrow, Epik had a fiduciary duty to Adkisson to exercise a high degree of care to conserve the money placed in escrow and pay it only to those parties entitled to receive the funds.  Specifically, Epik had a duty to properly perform its escrow services including by (a) maintaining Adkisson's escrow funds separately from all other funds; (b) using Adkisson's escrow funds only for the accepted purpose of purchasing the <nourish.com> domain name or returning such funds to Adkisson; and (c) not misappropriating, embezzling or otherwise using Adkisson's Escrow Funds for any other purpose.

114.    Monster represented that he and Epik would provide escrow services to Adkisson, and thus had the same fiduciary duties to Adkisson.

115.    When Royce became Epik's CEO in September 2022, he immediately took control of Epik's finances. Monster maintained majority ownership but according to Monster Royce was now in charge of the company. In fact, Royce used his newfound powers to consolidate control over all aspects of the business. Royce's responsibilities as CEO included maintaining Adkisson's Escrow Funds in escrow, sequestered from funds used for Epik's business. As the holder of Escrow Funds, and the individual in charge of maintaining proper escrow services in relation to those

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

funds, Royce further represented to Adkisson that the Escrow Funds would be returned to him. Thus, Royce also had the same fiduciary duties to Adkisson.

116.    At Epik's direction, Adkisson followed all of Epik's instructions regarding use of their Epik Escrow service and placed $327,000 in the Epik Escrow account.

117.    On information and belief, Adkisson's funds were never placed in and were not maintained in, an escrow account.  Instead, Adkisson's funds were used by Monster, Royce and Epik to settle separate debts or for other personal or business reasons, unrelated to Adkisson's purchase of the <nourish.com> domain name. Such actions breached Epik, Monster and Royce's fiduciary duties to Adkisson.

118.    Through Epik, Monster and Royce's conduct, Adkisson has been damaged in an amount to be fully determined at trial and Adkisson is entitled to damages and injunctive relief.

### FOURTH CAUSE OF ACTION
*Violation of the Washington Consumer Protections Act, RCW 19.86.020*
**(All Defendants)**

119.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

120.    The foregoing acts of Defendants constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of RCW 19.86.020.

121.    Defendants' conduct affects and is contrary to the public interest, tends to mislead a substantial portion of the public, and has injured Adkisson.  Defendants' conduct is also likely to be repeated and to injure other members of the public and Washington residents.

122.    Specifically, and in addition to the conduct described above, Defendants claimed to offer escrow services in connection with its services in brokering domain name transfers and sales.  However, instead of providing those escrow services, Defendants misappropriated the funds they promised to hold in escrow.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

123.     Defendants also acted unfairly and deceptively in purporting to offer escrow services when, on information and belief, Epik was not licensed to offer such services or to act as an escrow agent.

124.     Additionally, after the sale of the domain name fell through, Defendants represented that they would return Adkisson's Escrow Funds to Adkisson, and had the funds and ability to do so.  Instead, Defendants misled Adkisson to string him along while they used his funds to settle other debts or for other improper purposes.

125.     As more fully described in the above paragraphs, Monster and Royce were both personally involved in this conduct. For instance, Monster induced Adkisson to rely on him and Epik to serve as an escrow agent knowing they never intended to keep Adkisson's funds in escrow. And Royce made false promises to repay Adkisson in order to delay Adkisson's attempts to recover his funds so that Royce could continue to misappropriate those funds, conceal past fraud, pay himself salary and bonus, pay his friends, and prop up Epik for a quick sale.

126.     Defendants conduct, including Monster and Royce's intentional delay tactics, have also made victims of numerous other consumers that have complained of highly similar conduct by Defendants resulting in the misappropriation of millions of dollars.

127.     Defendants are likely to repeat their actions, and likely have and will continue to harm other members of the public in a similar fashion.

128.     As a result of Defendants' conduct, Adkisson has been damaged in an amount to be proven at trial including actual damages, treble damages, and costs of litigation and attorneys' fees.

## FIFTH CAUSE OF ACTION
### *Violations of Racketeer Influenced and Corrupt Organizations Act,* 18 U.S.C. § 1962(c)
### (All Defendants)

129.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

130.    Defendants Monster and Royce are "persons" within the definition of 18 U.S.C.§ 1961(3).  Monster is the founder of Epik Holdings, Epik Inc., and Masterbucks.  Royce began working for the Epik enterprise at least as early as March 2022 then became Epik's Executive Vice President of Operations, and has served as the CEO for Epik since September 1, 2022.

131.    Epik is an "enterprise" as defined by 18 U.S.C. § 1961(4) and engaged in, and had activities affecting, interstate and foreign commerce.

132.    Royce and Monster wrongfully conducted or participated, directly or indirectly, in the conduct of the affairs of Epik through a pattern of racketeering activity.  In connection therewith, Defendants committed at least the following racketeering acts within the meaning of 18 U.S.C. § 1961(1):

   a.    <u>Wire Fraud</u>.  Defendants devised a scheme or artifice to defraud by means of wire communication in interstate or foreign commerce in violation of 18 U.S.C. § 1343, in that, as described above and under false and/or fraudulent pretenses, representations, or promises:

      i.    Defendants purported to act as an escrow service in the sale and purchase of domain names, while in fact, Defendants comingled funds entitled for escrow, misappropriated those funds, and used consumers' escrow funds to obfuscate Defendants' fraudulent activities.  Defendants used wire transmissions to transmit false or fraudulent representations regarding its escrow services, including by email and through the Epik website, to obtain money that was also transferred by means of wire transmission.

      ii.   Defendants purported to act as a broker for domain names, while in fact, Defendants accepted payment for domain names but did not transfer the domain name that was purchased and retained the payment.  Defendants used wire transmissions to transmit false or fraudulent representations

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 24

162081250.1

regarding its domain broker services to obtain money that was also transferred by means of wire transmission.

   iii.   In connection with the Defendants' fraudulent scheme, Monster and Royce made false representations to Adkisson and other consumers promising to repay funds Defendants misappropriated and were in the process of misappropriating in order to delay efforts to recover their funds to hide the fraudulent scheme and complete the misappropriation of the funds. Defendants used wire transmissions including email and text messages to transmit these false or fraudulent representations.

133.    Defendants racketeering acts were committed in furtherance of a common fraudulent scheme so that Monster, Royce and Epik could wrongfully spend Adkisson's—and other consumers'—funds on themselves and the Epik enterprise, sell Epik or its assets, conceal the fraudulent scheme, and abscond with the funds and profits.

134.    On information and belief, Defendants' racketeering acts have been ongoing for years, and began at least as early as May 11, 2022 and continuing through the present. Royce has personally been involved in directing these acts since at least as early as when he CEO in September 2022.

135.    Beginning at least as early as September 1, 2022, Royce had control of Epik's finances and used his position to conceal the fraudulent scheme by making false promises to Adkisson and other consumers. Prior to this, Royce was Epik's Vice President of Operations and likewise had knowledge and control of Epik's operations.

136.    Monster has at all times been the majority owner of Epik and has the ability and authority to control Epik. But at this point Royce is in full control over Epik.

137.    Defendants' racketeering acts are part of an on-going and continuous pattern, involving defrauding numerous consumers through the same or similar methods. This pattern of

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 25

162081250.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

racketeering acts is likely to be repeated, is ongoing, and is, on information and belief, Defendants' regular way of conducting business.

138.    Defendants racketeering acts were and are being committed in interstate commerce, affecting consumers in multiple states.

139.    As a proximate result of Defendants' violation of 18 U.S.C. § 1962(c), Adkisson has sustained damage in an amount to be proved at trial, and is entitled to injunctive relief, recover treble damages, costs of litigation and attorneys' fees.

## SIXTH CAUSE OF ACTION
### *Violations of Racketeer Influenced and Corrupt Organizations Act,* 18 U.S.C. § 1962(a)
### (All Defendants)

140.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

141.    Defendants Monster and Royce are "persons" within the definition of 18 U.S.C. § 1961(3).  Monster is the founder of Epik Holdings, Epik Inc., and Masterbucks.  Royce began working for the Epik enterprise at least as early as March 2022, then became Epik's Executive Vice President of Operations, and has served as the CEO for Epik since September 1, 2022.

142.    Epik is an "enterprise" as defined by 18 U.S.C. § 1961(4) and engaged in, and had activities affecting, interstate and foreign commerce.

143.    Royce and Monster received income from a pattern of racketeering activity as described in the preceding paragraphs, including receipt of Adkisson's Escrow Funds and funds from other consumers.

144.    Royce and Monster improperly used that income, including Adkisson's Escrow Funds, in furtherance of the operation of the Epik enterprise to conceal the fraudulent scheme, misappropriate the funds to themselves and other officers of Epik, and in attempts to sell Epik or its assets.  Because of Royce's and Monster's use of Adkisson's Escrow Funds, which should have been sequestered from Epik's use, Adkisson has been unable to recover his funds.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

145.     Royce began participating in the Epik enterprise at least as early as March 2022, later acting as Epik's Executive Vice President of Operations.  Royce continued his involvement when he became the CEO of the Epik enterprise in September 2022. At that time, he immediately took control of Epik's finances and used his position to conceal the fraudulent scheme by making false promises to Adkisson and other consumers.

146.     Monster has at all times been the majority owner of Epik and has the ability and authority to control Epik.

147.     Royce and Monster have thus participated as principals for the Epik enterprise.

148.     Defendants' racketeering acts are part of an on-going and continuous pattern, involving defrauding numerous consumers through the same or similar methods.  This pattern of racketeering acts is likely to be repeated, is on-going, and is, on information and belief, Defendants' regular way of conducting business.

149.     Defendants' racketeering acts were and are being committed in interstate commerce, affecting consumers in multiple states.

150.     As a proximate result of Defendants' violation of 18 U.S.C. § 1962(a), Adkisson has sustained damage in an amount to be proved at trial, and is entitled to injunctive relief, recover treble damages, costs of litigation and attorneys' fees.

### SEVENTH CAUSE OF ACTION
*Violations of Racketeer Influenced and Corrupt Organizations Act,* **18 U.S.C. § 1962(d)**
**(All Defendants)**

151.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

152.     Defendants Monster and Royce are "persons" within the definition of 18 U.S.C.§ 1961(3).  Monster is the founder of Epik Holdings, Epik Inc., and Masterbucks.  Royce began working for the Epik enterprise at least as early as March 2022, then became Epik's Executive Vice President of Operations, and has served as the CEO for Epik since September 1, 2022.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 27

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

153.    Epik is an "enterprise" as defined by 18 U.S.C. § 1961(4) and engaged in, and had activities affecting, interstate and foreign commerce.

154.    Royce and Monster wrongfully conspired to violate 18 U.S.C. § 1962(c) by conspiring to conduct or participate, directly or indirectly, in the conduct of the affairs of Epik through a pattern of racketeering activity described in the preceding Paragraphs.

155.    Royce and Monster wrongfully conspired to violate 18 U.S.C. § 1962(a) by conspiring to use income derived from a pattern of racketeering activity in furtherance of the operation of the Epik enterprise to conceal the fraudulent scheme, misappropriate the funds to themselves and other officers of Epik, and in attempts to sell Epik or its assets as described in the preceding Paragraphs.

156.    As a proximate result of Defendants' violation of 18 U.S.C. § 1962(d), Adkisson has sustained damage in an amount to be proved at trial, and is entitled to recover treble damages, costs of litigation and attorneys' fees.

### EIGHTH CAUSE OF ACTION
#### *Unjust Enrichment* (All Defendants)

157.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

158.    Adkisson provided Epik with $327,000 to be held in escrow.

159.    As described in the paragraphs set forth above, Defendants have unjustly retained and benefitted from retaining Adkisson's Escrow Funds and refusing to return those funds, at the expense of Adkisson including by using the Escrow Funds to conceal fraudulent activity and in furtherance of the operation of Epik.

160.    Under the circumstances, it is unjust for Defendants to retain Adkisson's Escrow Funds.

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 28

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162081250.1

## NINTH CAUSE OF ACTION
### *Conversion* (All Defendants)

161.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the forgoing paragraphs as if fully set forth herein.

162.    Adkisson provided Epik with $327,000 to be held in escrow.

163.    As described in the paragraphs set forth above, Defendants have willfully interfered with and converted Adkisson's Escrow Funds, as a result of which Adkisson has been deprived of possession and use of its property including by using the Escrow Funds to conceal fraudulent activity and in furtherance of the operation of Epik.

164.    Defendants had no lawful justification to retain Adkisson's Escrow Funds.

165.    As a result of Defendants' actions, Adkisson has been damaged in an amount to be proven at trial but in an amount no less than $307,000.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Adkisson prays for the following relief:

A.    For judgment in favor of Plaintiff, and against Defendants on all claims;

B.    For Plaintiff's actual damages, recovery of unjust enrichment, treble damages, and punitive damages, in such amounts as may be proven at trial;

C.    For injunctive relief, enjoining Defendants from transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of Adkisson's Escrow Funds and any other amounts owed to Adkisson, including but not limited to by transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, withdrawing, granting a lien or security interest or

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 29

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

other interest in, or otherwise disposing of any of Defendants' assets or companies that Adkisson's Escrow Funds were used in connection with;

       D.      For judgment against Defendants for Plaintiff's costs of suit, including Plaintiff's reasonable attorneys' fees;

       E.      For pre- and post-judgment interest as allowed by law;

       F.      For such other relief as the Court may deem just and proper.

       DATED this 15th day of May, 2023.

s/ David A. Perez
David A. Perez, WSBA No. 43959
s/ Christian W. Marcelo
Christian W. Marcelo, WSBA No. 51193
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
E-mail:  DPerez@perkinscoie.com
E-mail:  CMarcelo@perkinscoie.com

Attorneys for Plaintiff Matthew Adkisson

FIRST AMENDED COMPLAINT (NO. 2:23-CV-00495-MJP) – 30

162081250.1