THE HONORABLE MARCIA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW ADKISSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EPIK HOLDINGS, INC., a Washington Corporation; EPIK INC., a Washington Corporation; MASTERBUCKS LLC, a Wyoming company; ROBERT W. MONSTER, an individual; and BRIAN ROYCE, an individual,<br><br>Defendant. | No. 23-cv-495 MJP<br><br>OPPOSITION TO DEFENDANT BRIAN ROYCE'S MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR:<br>Friday, May 19, 2023 |

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –

162050877.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 1

III. ARGUMENT ....................................................................................................................... 4

    A. Legal Standard ......................................................................................................... 4

    B. Royce Is Complicit in or Led the Tortious Conduct Pled in the Amended Complaint ................................................................................................................. 5

        1. Fraudulent Misrepresentation ...................................................................... 5

        2. Breach of Fiduciary Duty ............................................................................. 7

        3. Washington Consumer Protection Act ........................................................ 8

        4. Racketeer Influenced and Corrupt Organizations Act (RICO) - Wire Fraud - 18 U.S.C. § 1962(c) .............................................................. 10

        5. Unjust Enrichment and Conversion ........................................................... 11

IV. CONCLUSION .................................................................................................................. 12

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – i

162050877.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Ins. Co. v. Tacoma Therapy, Inc.*,
   204 F. Supp. 3d 1181 (W.D. Wash. 2016)..................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................4

*Cook Prods., LLC v. Swanicke*,
   No. C16-1844 TSZ, 2017 WL 5665427 (W.D. Wash. Aug. 24, 2017)...............4, 5

*Kaspers v. Howmedica Osteonics Corp.*,
   No. C15-0053JLR, 2015 WL 12085853 (W.D. Wash. Oct. 23, 2015).............5, 6, 7

*King Cnty. v. Viracon, Inc.*,
   No. 2:19-CV-508-BJR, 2019 WL 12043501 (W.D. Wash. Dec. 4, 2019)..........5, 7

*Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*,
   No. 2:13-CV-1034 MJP, 2016 WL 3226347 (W.D. Wash. June 13, 2016)..........11

*Lang v. Strange*,
   No. 3:21-CV-05286-RJB, 2021 WL 2333337 (W.D. Wash. June 8, 2021)...........5

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005).....................................................................................10

*Markov v. ABC Transfer & Storage Co.*,
   76 Wn.2d 388 (1969)..............................................................................................6, 7

*Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*,
   110 Wn.App. 412 (2002)............................................................................................7

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007)....................................................................................10

*Orr v. Bank of Am.*,
   285 F.3d 764 (9th Cir. 2002)....................................................................................10

*Perkumpulan Inv. Crisis Ctr. Dressel--WBG v. Regal Fin. Bancorp, Inc.*,
   781 F. Supp. 2d 1098 (W.D. Wash. 2011)...............................................................12

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162050877.1

*Priv. Client Fiduciary Corp. v. Chopra*,
    No. 22-CV-00436-LK, 2023 WL 2372917 (W.D. Wash. Mar. 6, 2023) ................ 7, 8, 11, 12

*R & R Surgical Inst. v. Int'l Longshore & Warehouse Union*,
    No. CV 21-00640-MWF-AS, 2022 WL 1514653 (C.D. Cal. Jan. 5, 2022) .................... 10, 11

*Styrk v. Cornerstone Invs., Inc.*,
    61 Wn.App. 463 (1991) ........................................................................................ 8

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ................................................................................ 5

*Wells v. Chase Home Fin., LLC*,
    No. C10-5001RJB, 2010 WL 4858252 (W.D. Wash. Nov. 19, 2010) ................................. 9

**STATUTES**

18 U.S.C. § 1962(a) ..................................................................................................... 10

18 U.S.C. § 1962(c) ..................................................................................................... 10

Racketeer Influenced and Corrupt Organizations Act ......................................................... 10, 11

Washington's Consumer Protection Act ............................................................................. 8, 9

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 4, 5

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –
iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162050877.1

## I.  INTRODUCTION

Brian Royce's Motion to Dismiss (the "Motion") fails on the merits and is moot considering Plaintiff Matthew Adkisson's recently filed First Amended Complaint. Dkt. No. 12. Robert Monster is the majority owner of the various Defendant Epik entities,[1] and together with Royce as Epik's CEO, the Defendants are operating an illegal *and ongoing* scheme to embezzle consumers' funds while claiming to offer various domain registration and hosting services. Mr. Adkisson is one of their many victims. Since filing the lawsuit, many more victims have come forward to detail how Royce and the Epik defendants were entrusted to hold money *in escrow*, only to embezzle the money immediately thereafter. This ongoing fraud must end, and consumers like Mr. Adkisson must be made whole.

In his Motion, Royce focuses largely on what he terms a "timing issue," claiming that because he did not become CEO of Epik until after Mr. Adkisson transferred his funds to Epik, Royce cannot be liable. This is chronological sophistry. Royce purposefully omits that as CEO of Epik he personally made several materially false representations to Mr. Adkisson about repaying Mr. Adkisson's funds—which Epik was purportedly holding *in escrow*. Royce deliberately misled Mr. Adkisson for *months* while Defendants embezzled Mr. Adkisson's funds for purposes other than what Mr. Adkisson had intended. That is illegal. And, as detailed in the Amended Complaint, Royce was not just ***involved*** in this tortious conduct, he ***is in charge of i***t as the only person fully in control of Epik's finances.

Royce's Motion to Dismiss should be denied.

## II.  STATEMENT OF FACTS

Monster is the founder and majority owner of the various Epik companies. Amended Compl. ¶ 6. Epik operates what it calls the "Epikverse" which involves a mix of services offered by various companies owned by Monster, including Epik Holdings, Epik Inc. and Masterbucks,

---

[1] Epik Holdings, Inc., Epik Inc. and Masterbucks LLC (collectively, "Epik")

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – 1

162050877.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

primarily revolving around services related to domain name registration and renewal and website hosting. *Id.* ¶¶ 15-17. For ease, Mr. Adkisson will refer to the corporate defendants collectively as "Epik."

One such service that Epik offered was "escrow"—meaning the company would hold funds in escrow to facilitate the sale of a particular domain/website. *Id.* ¶ 18-20, 55-57.

Royce first began working with Monster and Epik in or around March 2022, soon becoming the company's Executive Vice President of Operations, placing him in charge of the company's day-to-day operations. *Id.* ¶ 41. He was quickly brought up to speed and integrated into Epik. *Id.* Royce was promoted to Epik's CEO effective September 1, 2022. *Id.* ¶ 42. Upon becoming CEO, Royce took full control of Epik's finances, including full control of the funds embezzled from Epik's consumers. *Id.* ¶ 43. Upon his promotion to CEO, Royce began using the consumer funds Epik was meant to hold in escrow or to use for consumers' domain-related services (e.g., renewing consumer's domain names), for purposes that consumers had not approved or intended, including, among other things, to pay himself salary and bonus, hire his friends to officer-level positions within Epik, and to pay off unrelated debts from prior misuse of funds. *Id.* ¶ 44. In other words, under Royce's leadership, Epik was embezzling funds that did not belong to the company.

In May 2022, Mr. Adkisson engaged Epik to purchase a domain name. *Id.* ¶ 48-49. Monster informed Mr. Adkisson that to complete the sale, Mr. Adkisson would need to use Epik's escrow services. *Id.* ¶ 51. Mr. Adkisson agreed and transferred Epik $327,000 to be held in escrow (the "Escrow Funds"). *Id.* ¶¶ 52-56. Unbeknownst to Mr. Adkisson, neither Epik nor Monster were licensed to provide escrow services. *Id.* ¶ 58.

When Royce became Epik's CEO on September 1, 2022, he immediately took full control of Epik's funds. *Id.* ¶ 62. Of course, before then, he was involved in the company's operations as its Executive Vice President of Operations. *Id.* ¶ 41. Royce was also fully and personally informed

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –
2

162050877.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

as to Mr. Adkisson's transaction and the funds Mr. Adkisson's Escrow Funds which Epik was holding. *Id.* ¶ 62.

On November 14, 2022—well after Royce had been promoted to CEO—Mr. Adkisson requested the return of his Escrow Funds. *Id.* ¶ 63. Royce represented that he would seek to secure the domain name, and expressly promised Mr. Adkisson "if [that] does not work then we of course will return the funds." *Id.* When Royce made this promise to "return the funds," he was in charge of Epik's finances and knew the promise to be false—and *materially so*. In fact, Epik did not intend to return the Escrow Funds to Mr. Adkisson, a fact that Royce already knew as CEO. *Id.* Instead, Royce and Epik were spending Mr. Adkisson's Escrow Funds for improper purposes including to pay Royce, his friends, and other debts. *Id.* ¶ 63, 65. Royce had also made similar misrepresentations to numerous other consumers who funds were being misappropriated. *Id.* ¶¶ 25-35. Mr. Adkisson relied on Royce's representation and continued to allow Epik to work on securing the domain name, believing his funds were still being held in escrow and would be returned if the transaction did not go through. *Id.* ¶ 62.

On December 2, 2022, Mr. Adkisson explicitly informed Royce and Defendants that he would be ending the domain name purchase transaction and again requested that the Escrow Funds be returned. On December 6, 2022, Royce again promised to have Mr. Adkisson's funds "returned [in] short order[.]" *Id* ¶ 70. Still, no payment was forthcoming. Royce knew this statement was false when he made it as he never intended to pay Mr. Adkisson: Royce had control of Epik's finances, knew Mr. Adkisson's Escrow Funds were not kept in escrow, and never planned to refund Mr. Adkisson. *Id.* Mr. Adkisson relied on this statement by withholding from taking action to collect the monies owed to him, all while Defendants, including Royce, continued to spend the funds that belonged to Mr. Adkisson (and other consumers). *Id.*

Over the next two months, Epik, Royce, and Monster continued to make false promises of repayment to Mr. Adkisson in order to delay him from seeking to recover his funds so that they could be used for other purposes. *Id.* ¶¶ 72-82.

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –
3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162050877.1

Defendants' scheme has victimized numerous other innocent consumers like Mr. Adkisson, with Royce at the helm of Epik. *Id.* ¶¶ 25-35. To name just a few such instances:

- On September 27, 2022, after Royce became Epik's CEO, a consumer used Epik's purported "escrow" services to sell a domain name for $100,000. Epik sold the domain and collected $100,000. Royce, however, wouldn't release the funds to the consumer. *Id.* ¶ 31. The consumer has still not received her funds. *Id.*

- On April 7, 2023, another consumer posted a complaint that they lost $1.5 million in September 2021—again after Royce took over—detailing numerous instances of fraud. The consumer specifically noted that Royce personally promised "to cover in full their debt" and "asked us to wait patiently" but still no payment was forthcoming. *Id.* ¶ 25.

- On March 9, 2023, a consumer reported that since October 2022, he has been unable to withdraw his $10,800 balance from Epik. *Id.*

- Another consumer disclosed that after selling his domain name using Epik's purported escrow services, he was only able to withdraw $12,000 of the $50,000 paid for the domain name. Critically, it was not until Royce took control of Epik's finances that the consumer was prevented from withdrawing the remaining funds. *Id.* ¶ 33.

These are but four of at least dozens of recent similar complaints, which almost exclusively arise from *after* the time that Royce became CEO of Epik. *Id.* ¶¶ 25-35.

Alarmingly, it appears Defendants' fraudulent conduct is *ongoing* and when a consumer pays Defendants to register a domain name, Defendants, through Epik, accept the payment but do not register the domain name for the consumer and instead *pocket the money*. *Id.* ¶ 89.

This is embezzlement, plain and simple.

### III.   ARGUMENT

#### A.   Legal Standard

On a motion to dismiss under Rule 12(b)(6), a plaintiff need only allege facts sufficient to state a claim for relief that is plausible on its face. *Cook Prods., LLC v. Swanicke*, No. C16-1844

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – 4

162050877.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

TSZ, 2017 WL 5665427, at *1 (W.D. Wash. Aug. 24, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007)). "A claim has facial plausibility when the pleaded factual content allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On a Rule 12(b)(6) motion, the court must accept the complaint's factual allegations as true and draw "all reasonable inferences in favor of the nonmoving party." *Id*. (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).

For allegations of fraud, the alleging party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The alleging party meets this standard by alleging "the who, what, when, where, and how of the misconduct charged." *King Cnty. v. Viracon, Inc*., No. 2:19-CV-508-BJR, 2019 WL 12043501, at *2 (W.D. Wash. Dec. 4, 2019) (cleaned up).

By the applicable standard for each claim, it is abundantly clear that Royce's motion should be denied. He is actively involved as the leader of a fraudulent scheme to steal, misappropriate, and embezzle funds, including the funds belong to Mr. Adkisson.

**B. Royce Is Complicit in or Led the Tortious Conduct Pled in the Amended Complaint**

As a threshold matter, Royce's Motion should be denied as moot in light of Mr. Adkisson's First Amended Complaint. *Lang v. Strange*, No. 3:21-CV-05286-RJB, 2021 WL 2333337, at *1 (W.D. Wash. June 8, 2021) ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent. . . . Because [defendant] moved to dismiss the original complaint, which "no longer performs any function," her motion should be denied as moot.") (cleaned up). Moreover, while the initial complaint was well-pleaded, there can be no reasonable dispute that the Amended Complaint cures each alleged deficiency identified by Royce.

**1.  Fraudulent Misrepresentation**

The nine elements of fraudulent misrepresentation are: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –
5

162050877.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

suffered by the plaintiff." *Kaspers v. Howmedica Osteonics Corp.*, No. C15-0053JLR, 2015 WL 12085853, at *9 (W.D. Wash. Oct. 23, 2015). "[I]f a promise is made for the purpose of deceiving and with no intention to perform, it constitutes such fraud as will support an action for deceit." *Markov v. ABC Transfer & Storage Co.*, 76 Wn.2d 388, 396 (1969). Likewise, "if the promise is made without care or concern whether it will be kept, and the promisor knows or under the circumstances should know that the promisee will be induced to act or refrain from acting to his detriment, the promise will likewise support an action by the promise." *Id.*

Royce argues that Mr. Adkisson's fraudulent misrepresentation claim fails as to Royce because Royce could not have "induced Plaintiff to send monies to Epik four months before Royce joined Epik." That is a strawman argument and should be ignored. Mr. Adkisson does not allege that Royce induced him to make the initial payment to Epik—that was Monster and Epik. Royce's role was the misappropriation of Mr. Adkisson's Escrow Funds and *covering up* that misappropriation. Amended Compl. ¶¶ 61-80. He did so by making false promises to Mr. Adkisson regarding repaying Mr. Adkisson's funds in an effort to delay Mr. Adkisson from seeking to recover those funds, and lying about the status of Mr. Adkisson's funds. *Id.* Such conduct constitutes fraud. *Kaspers*, No. C15-0053JLR, 2015 WL 12085853, at *9 (denying motion to dismiss where plaintiff alleged "numerous affirmative, material misrepresentations made by Howmedica employees with the intent to cause her" to refrain from certain actions).

The statements were also material and Mr. Adkisson relied on those false statements to his detriment, just as Royce intended. Royce successfully delayed Mr. Adkisson from initiating legal action to secure the return of his funds by over four months, during which Epik apparently continued to spend and misappropriate the funds that should have been held in escrow for Mr. Adkisson and other consumers. *Id.* ¶ 71. This delay tactic was intentional: Defendants attempted to buy as much time as possible to pay off old debts to cover up misappropriation from *other* consumers, pay back other creditors, and, of course, to keep paying themselves. *Id.* Then, after spending his money, Defendants claimed to be "cash-strapped" and unable to fulfill their promise

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –
6

162050877.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

to repay Mr. Adkisson. *Id*. ¶ 81. And now, after successfully causing Mr. Adkisson to delay action, Defendants are attempting to sell Epik's assets, intending to leave Mr. Adkisson without a path to recover his Escrow Funds. *Id*. ¶¶ 84-90. This pattern of Royce's false promises and delays is not unique to Mr. Adkisson's case; it's Royce's strategy with the many other consumers from whom Defendants' stole and constitutes fraud. *See id*. ¶¶ 25-35; *see e.g., Kaspers*, No. C15-0053JLR, 2015 WL 12085853, at *9; *Markov*, 76 Wn.2d 388, 396 (false promise to renew lease constituted fraud).

Finally, Mr. Adkisson sufficiently alleged the "who, what, when, where and how" of Royce's misrepresentations. Specifically, on November 14, 2022, Royce ***personally promised*** Mr. Adkisson that if Defendants were unable to secure the domain name for Mr. Adkisson, his Escrow Funds would be returned. *Id*. ¶ 63. And on December 6, 2022, Royce again ***personally promised*** that Mr. Adkisson's "funds [would] be returned [in] short order[.]" *Id* ¶ 70. Both statements were false, and as the individual in charge of Epik's finances, Royce knew the funds were had been misappropriated, and so knew the statements were false. *Id*. ¶¶ 63, 71. In fact, as the EVP of Operations and then CEO, Royce was the person *in charge* of the misappropriation.

Mr. Adkisson's fraudulent misrepresentation claim against Royce is well-pled identifying the "who, what, when, where and how" of the fraud, and should not be dismissed. *See King Cnty. v. Viracon, Inc.*, No. 2:19-CV-508-BJR, 2019 WL 12043501, at *5 (W.D. Wash. Dec. 4, 2019) (denying motion to dismiss fraud claim where allegations placed defendant "on notice of the specific misconduct of which it is charged.").

### 2. Breach of Fiduciary Duty

A claim for breach of fiduciary duty requires a plaintiff to prove "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." *Priv. Client Fiduciary Corp. v. Chopra*, No. 22-CV-00436-LK, 2023 WL 2372917, at *6 (W.D. Wash. Mar. 6, 2023) (citing *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn.App. 412, 432 (2002)). Each element is well-pleaded.

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – 7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162050877.1

Royce became Epik's CEO in September 2022, he immediately took control of Epik's finances and consolidated his control over all aspects of the business. *Id.* ¶ 115. Royce's responsibilities as CEO included maintaining Mr. Adkisson's Escrow Funds in escrow, sequestered from funds used for Epik's business. *Id.* Defendants' promised escrow services specifically claimed that they would "receive and hold funds from the Buyer, then receive and hold domain(s) from the Seller" and if the transaction did not go through, Epik would reimburse the funds to the Buyer. *Id.* ¶ 53, 57. Royce also personally promised Mr. Adkisson his funds would be returned. *Id.* ¶¶ 63, 70. Thus, Royce—who had control of the Escrow Funds and promised to return them to Mr. Adkisson—had a fiduciary duty to Mr. Adkisson "to conduct the transaction with scrupulous honesty, skill and diligence" and to "comply strictly with the provisions of the escrow agreement." *Styrk v. Cornerstone Invs., Inc.*, 61 Wn.App. 463, 472 (1991) (attorney acting as escrow agent had fiduciary duty to individual entrusting funds to agent); *Chopra*, No. 22-CV-00436-LK, 2023 WL 2372917, at *6 (W.D. Wash. Mar. 6, 2023) (allegations of commingling principal's funds and spending those funds for agent's personal benefit sufficient to allege violation of fiduciary duty).

Instead of maintaining Mr. Adkisson's funds, or returning them, as Royce had a duty to do, Royce used Mr. Adkisson's funds to settle separate debts, pay himself, or for other personal or business reasons. *Id.* ¶ 117. This misuse of funds with which Royce was entrusted was a clear breach of fiduciary duty, and directly caused Mr. Adkisson's loss of his Escrow Funds. Mr. Adkisson's breach of fiduciary duty claim is thus well-pleaded. *See Styrk*, 61 Wn.App. at 472; *Chopra*, No. 22-CV-00436-LK, 2023 WL 2372917, at *6.

### 3. Washington Consumer Protection Act

The elements to establish a violation of Washington's Consumer Protection Act, are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) injury to his business or property; and (5) that the injury was proximally caused by the unfair or deceptive act. *Allstate Ins. Co. v. Tacoma Therapy, Inc.*, 204 F. Supp. 3d 1181, 1187–88

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –
8

162050877.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(W.D. Wash. 2016) (holding that pattern of racketing activity supported finding of violation of consumer protection act).

Royce's actions clearly implicate the CPA. First, he deceived Mr. Adkisson by promising to hold his funds in escrow, repeatedly reaffirming the company's commitment to hold it in escrow, falsely representing that the funds would be returned—even as he directed the company to embezzle and misappropriate the funds. *Id.* ¶¶ 63, 70. Second, the actions obviously took place in commerce, as the underlying transaction was to sell a domain name. *Id.* ¶ 49. Third, there is no real dispute that this affects the public interest; after all, *dozens* (if not more) of consumers have reported *the exact same thing happening to them*. *Id.* ¶¶ 25-35. This fraud is *ongoing* and only getting worse. Fourth, losing this money clearly harmed Mr. Adkisson's property—after all, his $327,000 should have been held in escrow, and sequestered appropriately; instead, Royce and the other defendants decided to use Mr. Adkisson's funds for their own purposes. *Id.* ¶ 125. And finally, there is no causation dispute here: the deceptive acts described in the complaint are the very reason why Mr. Adkisson's funds have not been returned. *Id.* ¶¶ 106, 109.

It is hard to imagine a more straightforward CPA claim than this.

Nevertheless, in his Motion to Dismiss, Royce takes a purposefully myopic view of the Consumer Protection Act claim, disregarding the dozens of paragraphs that proceed that cause of action describing Royce's involvement in Defendants' fraudulent scheme. Mot. at 5. Instead, Royce employs his chronological sophistry, focusing solely on the notion that Royce was not CEO when Mr. Adkisson initially transferred his funds to Epik for escrow services. *Id.* Royce's involvement, however, is in *continuing* to perpetuate the fraud and covering it up. Amended Compl. ¶¶ 62-79, 119-122. And Defendants, including Royce, have effectuated this scam on numerous consumers, and continue the practice to this day. *Id.* ¶ 86. Mr. Adkisson has thus adequately pled that Royce committed an unfair or deceptive practice, that occurred in commerce, affecting the public interest, and that caused injury to Mr. Adkisson. *Wells v. Chase Home Fin., LLC*, No. C10-5001RJB, 2010 WL 4858252, at *9 (W.D. Wash. Nov. 19, 2010) (CPA claim

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162050877.1

sufficiently pleaded in private dispute where allegations indicated misrepresentations were likely also directed to other consumers).

### 4. Racketeer Influenced and Corrupt Organizations Act (RICO) - Wire Fraud - 18 U.S.C. § 1962(c).[2]

The elements of a civil RICO claim are as follows: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005); 18 U.S.C. § 1962(c). Mr. Adkisson properly alleges each element, describing in detail the fraudulent scheme devised and implemented by Monster and Royce in furtherance of the Epik enterprise. Amended. Compl. ¶¶ 48-83, 129-139. As Mr. Adkisson describes in the Amended Complaint, Monster's and Royce's scheme was designed to misappropriate consumers' funds, use those funds for personal benefit and other improper purposes, and to conceal the fraud until such time as they could sell off Epik's assets and abscond with the profits. *Id.*

Royce challenges only the fourth element regarding whether the predicate act of wire fraud is adequately pled. Mot. at 6-7. "To state a RICO claim based on the predicate act of mail and wire fraud, a plaintiff must plead, in addition to the other elements of a RICO claim, '(1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the United States mail or interstate telephone wires in furtherance thereof.'" *R & R Surgical Inst. v. Int'l Longshore & Warehouse Union*, No. CV 21-00640-MWF-AS, 2022 WL 1514653, at *6 (C.D. Cal. Jan. 5, 2022) (quoting *Orr v. Bank of Am.*, 285 F.3d 764, 782 (9th Cir. 2002)). "The only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).

---

[2] In his Amended Complaint, Mr. Adkisson also alleges a separate RICO violation of 18 U.S.C. § 1962(a) which prohibits the use of income derived "from a pattern of racketeering activity" to be used in connection with "any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) –
10

162050877.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

In challenging the wire fraud claim, Royce focuses solely on Mr. Adkisson's initial transfer of funds to Epik. Mot. at 6. But again, Royce's involvement in the Epik enterprise and its fraudulent scheme, at least as to Mr. Adkisson, was separate from the initial transfer of monies. Instead, Royce furthered the scheme by intentionally delaying Mr. Adkisson's recovery of funds so that his and the Epik enterprise's misappropriation could continue, to pay himself funds, and to cover up past misappropriation by paying other debts owed by Epik. Amended Compl. ¶¶ 63-80, 133-137. Royce took these actions as Epik's CEO, with full control of Epik and its finances. *Id.* ¶ 135. His fraudulent actions directed toward Mr. Adkisson are part of Royce's larger scheme in which he defrauded numerous other consumers in a similar manner that appears to be in operation *to this day*. *Id.* ¶¶ 25-35. Finally, Royce communicated with Mr. Adkisson via e-mail and text message, using the United States interstate telephone wires. *Id.* ¶¶ 63, 70; *see Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, No. 2:13-CV-1034 MJP, 2016 WL 3226347, at *15 (W.D. Wash. June 13, 2016) (use of e-mail in fraudulent scheme satisfied "wire" requirement of wire fraud).

As with his fraudulent misrepresentation claim, Mr. Adkisson pleads Royce's conduct with specificity, including when the communications were made, by what methods, and how the conduct furthered the fraudulent scheme. Amended Compl. ¶¶ 63-80. Such allegations are more than sufficient to allege wire fraud for a RICO claim. *See R & R Surgical*, No. CV 21-00640-MWF-AS, 2022 WL 1514653, at *7 (C.D. Cal. Jan. 5, 2022) (mail fraud sufficiently alleged where plaintiff alleged who sent the transmissions, what the transmissions said, and how the transmissions were false or in furtherance of the scheme to defraud).

### 5. Unjust Enrichment and Conversion

The elements of unjust enrichment and conversion are straightforward. Conversion requires proof of three elements: "(1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby depriving the owner of possession." *Chopra*, No. 22-CV-00436-LK, 2023 WL 2372917, at *7. To adequately plead unjust enrichment, a party must allege "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – 11

162050877.1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Id.*

Both claims are well-pleaded. Royce became Epik's CEO and took control of the company and finances before Mr. Adkisson requested his funds be returned. Amended Compl. ¶¶ 62-65. Then, after Royce promised to return Mr. Adkisson's funds, he refused to do so instead spending the money on himself, his friends, and Epik. *Id.* ¶ 65. That Royce was not at the helm of Epik when Mr. Adkisson initially sent his money to Epik is irrelevant. Royce controlled Epik and its finances when Mr. Adkisson's money should have been returned to him, and Royce decided not to do so retaining the funds for himself. That is both unjust enrichment and conversion. *Chopra*, No. 22-CV-00436-LK, 2023 WL 2372917, at *7 (conversion sufficiently alleged where defendant wrongfully retained money provided by plaintiff); *Perkumpulan Inv. Crisis Ctr. Dressel--WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1117 (W.D. Wash. 2011) (unjust enrichment "successfully alleged" by allegations that "Defendants enriched themselves by embarking upon a comprehensive scheme to defraud" and retain investor's money).

### IV. CONCLUSION

For the reasons set forth, the Court should deny Royce's Motion to Dismiss.

I certify that this memorandum contains 4,199 words, in compliance with the Local Civil Rules.

ADKISSON'S OPPOSITION TO ROYCE'S
MOTION TO DISMISS (NO. 23-CV-495 MJP) – 12

162050877.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

RESPECTFULLY SUBMITTED this 15th day of May, 2023

s/ David A. Perez
David A. Perez, WSBA No. 43959
Christian W. Marcelo, WSBA No. 51193
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: DPerez@perkinscoie.com
E-mail: CMarcelo@perkinscoie.com

Attorneys for Plaintiff Matthew Adkisson

ADKISSON'S OPPOSITION TO ROYCE'S MOTION TO DISMISS (NO. 23-CV-495 MJP) – 13

162050877.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# CERTIFICATE OF SERVICE

On May 15, 2023, I caused to be served upon the below counsel at the address stated below, via the method of service indicated, a true and correct copy of the foregoing document.

| | |
|---|---|
| Andrew Ramiro Escobar<br>Meryl Hulteng<br>SEYFARTH SHAW LLP (SEA)<br>999 THIRD AVE STE 4700<br>SEATTLE, WA 98104<br>206-946-4910<br>aescobar@seyfarth.com<br>mhulteng@seyfarth.com | __X__  Via ECF-Filing |
| Robert Monster<br>*Pro Se*<br>&lt;rob@monsterventurepartners.com&gt; | __X__  Via Email |

**I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.**

EXECUTED at Seattle, Washington, on May 15, 2023.

_____

CERTIFICATE OF SERVICE
(NO. 23-CV-495 MJP) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162050877.1