THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW ADKISSON, an individual, <br><br> Plaintiff, <br><br> v. <br><br> EPIK HOLDINGS, INC., a Washington Corporation; EPIK INC., a Washington Corporation; MASTERBUCKS LLC, a Wyoming company; ROBERT W. MONSTER, an individual; and BRIAN ROYCE, an individual, <br><br> Defendant. | No. 2:23-cv-00495 MJP <br><br> [PROPOSED] TEMPORARY RESTRAINING ORDER |

THIS MATTER came before the Court for hearing on Plaintiff Matthew Adkisson's Motion for a Temporary Restraining Order against Defendants Epik Holdings, Inc., Epik, Inc., Masterbucks LLC, Robert W. Monster, and Brian Royce ("collectively Defendants"). Now, the Court having considered Plaintiff's motion, the declarations of David A. Perez, Matthew Adkisson, Debra Elliott, Derek Peterson, and Steve Greenspan, and other evidence provided in support of the motion, and the arguments of counsel, the Court hereby makes the following Findings of Fact and Conclusions of Law.

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 1

162327120.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I. FINDINGS OF FACT

1. Plaintiff Adkisson provided several notices to Defendants that he would be seeking a temporary restraining order with the Court to enjoin Defendants from selling the assets of Epik Holdings, Epik, Inc., and Masterbucks LLC (collectively, "Epik").

2. The key facts are largely not in dispute. Defendant Robert Monster is a Washington resident and the founder and majority owner of the various Epik-related companies, known as the "Epikverse" which includes Defendants Epik Holdings, Epik Inc. and Masterbucks (collectively, "Epik").

3. Epik purports to offer a mix of services primarily revolving around services related to domain name registration, renewal and sales, as well as website hosting. Most consumers like plaintiff use Epik for simple and rather quotidian transactions and domain registries.

4. Defendant Brian Royce first began working with Monster and Epik in or around March 2022, later becoming the company's Executive Vice President of Operations, placing him in charge of the company's day-to-day operations.

5. Mr. Adkisson is an individual who, in May 2022, needed basic domain registry and escrow services to complete a relatively anodyne purchase: acquiring the domain name <www.nourish.com>. Adkisson Decl. ¶ 2.

6. Mr. Adkisson noticed that the domain name was listed for sale by Epik on Epik.com, and he contacted Monster to purchase the domain. *Id.* Monster informed Mr. Adkisson that to complete the sale, Mr. Adkisson would need to use Epik's escrow services. *Id.* ¶ 3, Ex. A. Monster reassured Mr. Adkisson that Epik's "escrow services [was] #1 in the industry" and would be able to "protect buyer and seller." *Id.* ¶ 3. Based on Monster's representations, Mr. Adkisson agreed and using services offered on Epik.com, wired Epik $327,000 to be held in escrow (the "Escrow Funds"). *Id.* ¶ 4.

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 2

162327120.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

7. Unbeknownst to Mr. Adkisson, however, neither Epik nor Monster were licensed to provide escrow services. And instead of segregating the Escrow Funds, Defendants misappropriated the money for other purposes that Mr. Adkisson did not authorize.

8. After nearly six months with no results, on November 14, 2022, Mr. Adkisson requested the return of his Escrow Funds. Adkisson Decl. ¶ 7. Royce, who became Epik's CEO in September 2022, represented that he would seek to secure the domain name, and expressly promised Mr. Adkisson "if [that] does not work then we of course will return the funds." Adkisson Decl., Ex. C.  Mr. Adkisson relied on this representation and allowed Epik to continue to attempt to secure the domain name.

9. After no further progress was made in securing the domain name, on December 2, 2022, Mr. Adkisson explicitly informed Royce and Defendants that he would be ending the domain name purchase transaction and again requested that the Escrow Funds be returned.  *Id*., ¶ 8, Ex. C. In response, on December 6, 2022, Royce texted Mr. Adkisson and again promised to have Mr. Adkisson's funds "returned [in] short order[.]" *Id*., Ex. D. Mr. Adkisson again believed and relied on this representation.  Still, no payment was forthcoming.

10. Eventually, in early 2023, Epik admitted that it owed Adkisson the $327,000 it had promised to hold in escrow, and that sometime after Adkisson wired the funds to Epik, it was misappropriated, embezzled or both.  Perez Decl. ¶ 4; Amended Answer ¶ 73.  In other words, Epik conceded that the Escrow Funds were no longer available.  *Id.* Epik further claimed that the company was "cash strapped" and that Adkisson's Escrow Funds were misappropriated and used to pay other debts without his authorization.  *Id*.

11. Then, on January 11, 2023, Epik, through counsel, sent Mr. Adkisson a letter via e-mail promising to repay Mr. Adkisson his escrow funds. Specifically, the letter stated: "On behalf of Epik Holdings, Inc., Epik shall pay the debt owed to Mr. Adkisson in two installments, one on January 12, 2023, in the amount of $20,000, and the other no later than January 31, 2023, in the amount of $307,000." Perez Decl., Ex. B; Adkisson Decl. ¶ 10, Ex. E.

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

162327120.2

12. On January 12, 2023, Epik (through Monster) paid Mr. Adkisson $20,000. However, no further payments were made. Adkisson Decl. ¶ 11; Amended Answer ¶ 73.

13. On January 31, 2023, Monster contacted Mr. Adkisson's counsel. He confirmed that the amount owed to Adkisson—$327,000—was not in dispute. Perez Decl., Ex. D. Further, Monster stated that since Royce became CEO of Epik, Monster "believe[d] the company has had ample opportunity to fund a refund to Mr. Adkisson." *Id.* Monster identified several sources of funds available to Epik to repay Adkisson including a $1,000,000 loan, a $1,000,000 divestiture received by Epik in October 2022, and other assets "amount[ing to] more than $600,000 in cash." *Id.* Monster further represented that "in the event that the Company does not, or will not settle the balance due of $307,000, I am committed to covering this personally, and doing so asap." *Id.*

14. In response to Mr. Adkisson's Amended Complaint, Epik admits that "Epik owes Adkisson a refund of the $327,000 in funds he previously transferred to it, and that Epik, though its counsel, acknowledged this during the referenced call [a call with Mr. Adkisson's counsel]." Amended Answer ¶ 73.

15. Although this is not a class action (at least not yet), Defendants' conduct appears to have victimized many other innocent consumers like Mr. Adkisson. Several consumers have submitted declarations, and many others have reached out to Mr. Adkisson's counsel about their experiences with Defendants. For purposes of this motion, the Court accepts that Epik's conduct has affected and continues to affect not only Mr. Adkisson but numerous other consumers, including consumers in Washington.

16. On April 11, 2023, shortly after filing his complaint, Mr. Adkisson's counsel e-mailed Defendants raising concerns that the Epik entities were trying to sell off their assets "in an apparent effort to avoid repayment" to victims like Mr. Adkisson. Perez Decl., Ex. J. Mr. Adkisson's counsel made clear he would seek "immediate injunctive relief" if the company

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2

pursued an asset sale. *Id*. Mr. Royce responded right away with the assurance that "[n]o asset sales are pending at this time." *Id*.

17. On May 13, after learning that the company was pursuing the very asset sale that Mr. Royce had assured was not "pending," counsel for Mr. Adkisson again reached out to Epik and Mr. Monster. *Id.*, Ex. K. In that message, counsel made clear that "this so-called asset sale will serve only to transfer the valuable assets of the company to a third party, leaving it unable to re-pay consumers like Mr. Adkisson, causing irreparable harm." *Id*. Counsel reiterated Mr. Adkisson's intention to seek a temporary restraining order. In response, Epik's counsel acknowledged the potential transaction, and offered a partial payment only if Mr. Adkisson "release[d] all claims." *Id*.

18. Last week, Defendants disclosed that the potential buyer of Epik's assets is Registered Agents, Inc.

19. On May 30, 2023, the day before Mr. Adkisson filed his motion for a temporary restraining order, Mr. Monster himself revealed that the proposed transaction is part of a larger scheme to raid Epik of its valuable assets, and line the pockets of Mr. Royce's friends and contacts. Specifically, in an e-mail to Mr. Adkisson's counsel at Perkins Coie, Mr. Monster disclosed that Mr. Royce and Epik's current leadership have "destroyed" the company, and that in December 2022 Mr. Royce "gifted a bunch of Epik assets" to unnamed individuals with whom Mr. Royce is affiliated. *Id*., Ex. L.

20. Defendants apparently intend on transferring assets from one Epik entity to another—all to avoid liability. Mr. Monster himself believes that Epik and Registered Agents (the real contemplated buyer) are "being elusive" about what corporate entities will be involved.

21. In another message to counsel—also sent the day before this motion was filed— Mr. Monster reveals that the asset sale "*has been whittled down to a level insufficient to pay everyone*," and that "there has been an egregious pattern of side deals and self-dealing during the last 10 months, and that the objective is to wipe it [Epik] all clean." *Id*., Ex. M. Mr. Monster calls

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2

the transaction a "hijack and fire sale," which will "injure[] many people," and "a badly executed hijack operation." *Id*.

22.     In response to Mr. Monster's disclosures, Mr. Adkisson's counsel immediately reached out again to Epik's counsel, urging Epik to hold off on the sale, and that Mr. Adkisson intended to seek emergency relief. Perez Decl., Ex. N. Epik dismissed the need for an injunction by assuring Mr. Adkisson he could "veto" the transaction, and because Mr. Adkisson would get *some money* out of the deal.

23.     The court does not find either objection persuasive for the reasons discussed more fully below. Suffice to say that Mr. Adkisson has no real "veto"—as shown by the fact that Defendants signed the agreements despite Mr. Adkisson's objections. But more to the point, Mr. Adkisson is not a party to the asset sale, so he cannot enforce this so-called veto. Likewise, the potential for a partial payment to Mr. Adkisson is not enough to make him whole. Moreover, Epik is offering a partial payment only if Mr. Adkisson releases his claims against defendants—a precondition he is not obligated to accept.

## II.     CONCLUSIONS OF LAW

24.     A party seeking a temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

25.     Although not dispositive by itself, the first of these factors—likelihood of success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

26.     Both the law and the factual evidence presented to the Court clearly favor plaintiff's request for a temporary restraining order.

27.     Based on the Findings set forth above and the legal standards applicable to issuance of a temporary restraining order, a temporary restraining order, is necessary and

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 6

162327120.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

appropriate to preserve the status quo and avoid irreparable harm until the Court may hear and decide plaintiff's motion for a preliminary injunction.

**A.      Likelihood of success on the merits.**

28.     Mr. Adkisson need only show a likelihood of success on a single claim to meet this element for a temporary restraining order. The Court finds that he has shown a likelihood of success on each of his claims.

29.     *Breach of contract.* Mr. Adkisson is likely to succeed on his contract claim. Monster and Epik promised that in exchange for Mr. Adkisson using Epik's escrow services, Epik would hold Mr. Adkisson's funds in escrow.  That's a binding agreement.  Clearly, however, Epik did not hold Mr. Adkisson's funds in escrow, and as a result Mr. Adkisson has been damaged and unable to recover his Escrow Funds.  That's a breach and resulting damages.

30.     *Fraudulent misrepresentation*. Mr. Adkisson is likely to succeed on his fraudulent misrepresentation claim because the record—including e-mails, letters, and text messages—show that Defendants induced Mr. Adkisson to give Epik money under false pretenses. Specifically, the Defendants promised to perform escrow services even though they knew that Epik was not even *licensed* to perform such services, and that Epik had no intention of segregating the Escrow Funds. Epik also false represented to Mr. Adkisson that it would pay back the monies, all in an effort to delay Mr. Adkisson from taking legal action. Defendants' misrepresentations regarding their promises to return Mr. Adkisson's Escrow Funds also constitutes fraud.

31.     *Breach of fiduciary duty*. "An escrow agent owes a fiduciary duty to the parties to the escrow to conduct the transaction with scrupulous honesty, skill and diligence, and must comply strictly with the provisions of the escrow agreement." *Styrk v. Cornerstone Invs., Inc.*, 61 Wn.App. 463, 472, (1991) (attorney acting as escrow agent had fiduciary duty to individual entrusting funds to escrow agent).  Monster and Epik thus had a fiduciary duty to Mr. Adkisson when Monster represented that Epik would act as an escrow agent for Mr. Adkisson, asking Mr.

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 7

162327120.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

Adkisson to entrust Monster and Epik with his money and after accepting the Escrow Funds to be held in escrow. Likewise, while Mr. Adkisson's Escrow Funds were still in the care of Epik, Royce took control of Epik's finances and business operations as Epik's CEO, and reiterated the promise to return Mr. Adkisson's funds to him if the domain name purchase did not go through. So, Royce, too, had had a fiduciary duty to Mr. Adkisson. There was also a clear breach of that duty. Defendants did not maintain Mr. Adkisson's Escrow Funds in escrow and certainly did not act with "scrupulous honesty, skill and diligence" when they misappropriated his funds and made false promises to repay him. Likewise, Defendants breached their fiduciary duties by failing to comply with the escrow instructions after Mr. Adkisson instructed Defendants to "wire the funds back" and "return the funds held in escrow." Mr. Adkisson is thus likely to succeed on his breach of fiduciary duty claim.

32. *Consumer Protection Act*. The elements to establish a violation of Washington's Consumer Protection Act, are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) injury to his business or property; and (5) that the injury was proximally caused by the unfair or deceptive act. *Allstate Ins. Co. v. Tacoma Therapy, Inc.*, 204 F. Supp. 3d 1181, 1187–88 (W.D. Wash. 2016). It is hard to imagine a more straightforward CPA claim than this. This conduct is both unfair and deceptive, it occurred and is occurring in commerce, and clearly impacts the public interest as demonstrated by the numerous other consumers who have had their hard-earned money stolen by Defendants. Mr. Adkisson is likely to succeed on this claim as well.

33. *RICO claims*.

    a. The elements of a civil RICO claim for violating 18 U.S.C. § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 8

162327120.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

b. Violations of 18 U.S.C. § 1962(a) are similar and that section of the statute makes it unlawful for "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

c. Mr. Adkisson is likely to succeed in proving the elements of both of these claims.

d. As to the first and second elements, the conduct at issue is being performed by an enterprise. An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961. Epik, which Monster (its owner) and Royce (its CEO) are both working in furtherance of, constitutes an enterprise.

e. Mr. Adkisson is also likely to establish the third and fourth elements of his RICO claim. Defendants have engaged in a pattern of racketeering activities by committing wire fraud in order to effectuate their fraudulent scheme.  Racketeering activities include wire fraud, and "'pattern of racketeering activity' requires at least two acts of racketeering activity[.]" 18 U.S.C. § 1961(1), (5).

f. Here, it is evident that Defendants have committed several counts of wire fraud.  First, Defendants fraudulently induced Mr. Adkisson to wire $327,000 to Epik, claiming it would be held in escrow.  Adkisson Decl. ¶ 3. Defendants knew, however, that Mr. Adkisson's funds would not be held in escrow, and that Defendants were not even licensed to provide

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

162327120.2

escrow services. Perez Decl. ¶ 3.  Instead, these actions were taken in furtherance of Defendants' scheme to induce Mr. Adkisson to wire the Escrow Funds to Epik, to defraud Mr. Adkisson, so Defendants could misappropriate the Escrow Funds.  The communications with Mr. Adkisson, and the services provided by Epik for Mr. Adkisson to wire the Escrow Funds to Epik through Epik.com used wires as a means of transmission.  That, too, constitutes wire fraud.  *Stephens v. Marino White O'Farrell & Gonzalez*, No. C10-5820BHS, 2011 WL 3516082, at *3 (W.D. Wash. Aug. 11, 2011) (emails, phone calls, and wire transfers sufficient to establish wire fraud to support RICO claim).

g.  Defendants' pattern of racketeering activity is further demonstrated by the numerous consumers that Defendants defrauded in similar ways to Mr. Adkisson and the numerous consumers they continue to defraud.

h.  Likewise, Mr. Adkisson is likely to succeed in establishing Defendants' violations of 18 U.S.C. § 1962(a).  There is no doubt that Monster and Royce—Epik's owner and CEO—received "income derived, directly or indirectly, from a pattern of racketeering activity" and used it in connection with the operation of the Epik enterprise.  After all, Epik received the Escrow Funds, failed to sequester those funds as promised, comingled the Escrow Funds with other consumers' funds Defendants misappropriated, and used the funds in connection with Epik, including to pay other debts.

i.  Mr. Adkisson is likely to prevail on his RICO claims.

34.  *Unjust enrichment and conversion*. Defendants effectively concede liability as to both of these claims.  Defendants admit that Epik received the Escrow Funds, that Epik owes Mr. Adkisson the balance of at least $307,000 from the Escrow Funds, and that Mr. Adkisson has not

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 10

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2

been paid. Amended Answer ¶¶ 73. Epik also admitted that the Escrow Funds were used for other purposes by Epik, other than those authorized by Mr. Adkisson. Perez Decl. ¶¶ 3-4. Thus, Defendants have willfully and unlawfully retained Mr. Adkisson's escrow funds, and deprived him of the funds. That's conversion. Defendants also knowingly received the benefit of the Escrow Funds under circumstances that would be clearly inequitable to allow them to retain the Escrow Funds. That's unjust enrichment. Mr. Adkisson is thus likely to succeed on both claims.

**B.      Irreparable Harm.**

35.     It is likely that Mr. Adkisson will be irreparably harmed if a temporary restraining order is not issued.

36.     Mr. Adkisson will be immediately and irreparably harmed if the asset fire sale moves forward. "Where Plaintiffs seek an asset freeze, they must also show 'the likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.'" *Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, No. 13-CV-1034, 2013 WL 12173381, at *4 (W.D. Wash. June 19, 2013) (Pechman, J.) (quoting *Johnson v. Coururier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *Panyanouvong v. Aphay*, 2:14-CV-00275 RSM, 2014 WL 2986507 (W.D. Wash. July 1, 2014) (finding irreparable harm where defendants misappropriated plaintiff's investment for defendants' personal gain). Courts find a likelihood of dissipation of assets if there is evidence of a defendant fraudulently concealing assets. *See Dargan v. Ingram*, No. C08-1714RSL, 2009 WL 1437564, at *3 (W.D. Wash. May 22, 2009) (discussing, among other things, large cash gifts from defendant's brother to his wife, and defendant's lies regarding his income); *In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004).

37.     If Epik is allowed to proceed with its asset sale of "substantially all the assets" owned by Epik, as it intends to do shortly, Mr. Adkisson, and the numerous other consumers from whom Epik stole money will never be made whole. In fact, Mr. Monster himself disclosed the day before this filing that the deal has been "***whittled down to a level insufficient to pay everyone***," and part of "***an egregious pattern of side deals and self-dealing during the last 10-***

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 11

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

162327120.2

*months*" with the objective to "*wipe [Epik] clean*." Perez Decl. Ex. M. And several months ago, Mr. Royce—the current CEO driving the deal—"*gifted a bunch of Epik assets*" to unnamed individuals with whom he is affiliated. *Id*., Ex. L. That Mr. Monster himself—Epik's founder, majority owner, and a defendant in this very litigation—would candidly call the deal "*a badly executed hijack operation*," and that the company is "*being elusive*" about the true buyers, is reason enough to grant the motion. *Id*.

38. Epik's offer to Mr. Adkisson of a partial payment—and only if Mr. Adkisson releases his claims—does not change this calculus. Mr. Adkisson should not be forced to accept *less* than he is owed and less than what will make him whole—including his lost interest, attorneys' fees, and trebled damages from his RICO claims—simply to allow Epik to transfer its assets and avoid liability.

39. Epik's suggestion that there is no irreparable harm because Mr. Adkisson has a "veto" over the transaction. The Court rejects this argument as a red herring. If Mr. Adkisson's strenuous objections to the deal fell on deaf ears, of course he has no veto. Besides, there is nothing stopping Epik from simply negotiating a different deal with the same buyer or another buyer altogether. The purpose of this motion is to stop Epik from liquidating its assets in a manner that will prevent consumers like Mr. Adkisson from being made whole.

40. However, the more relevant upshot to Epik's "veto" argument is that it demonstrates that no bond is needed for this injunction to issue. After all, if Epik is willing to give Mr. Adkisson a "veto" without first posting a bond, then an injunction accomplishing the same thing should not require a bond either.

**C.    The balance of equities tilts in favor of Mr. Adkisson.**

41. To determine whether the balance of hardships favors the moving party, courts must "balance the interests of all parties and weigh the damage to each." *Kyko*, 2013 WL 12173381, at *4 ("Prohibiting Defendants from transferring or dissipating funds without Court approval—at least until they can be heard on the matter in the next ten days—is not a

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2

burdensome condition given that Defendants were not wholly engaged in a legitimate, lawful business. Thus, the risk weighs more heavily in favor of Plaintiffs"); *Fed. Trade Comm'n v. Arlington Press, Inc.*, 1999 WL 33574020, *13 (C.D. Cal. 1999) ("[T]he benefit in protecting consumers against potentially fraudulent activity, and securing for those who may have already been injured some form of redress outweighs the harm that may be suffered by individuals associated with the business.").

The balance of equities tips sharply in favor of Mr. Adkisson. There is no dispute that Epik owes him the funds at issue. If the asset sale continues, Mr. Adkisson faces a significant risk that there will be *no funds or assets for him*, or for other consumers, to collect from Epik. Defendants have a history of comingling funds, making misrepresentations, and not following through on commitments. By misappropriating funds and assets in the past, *including Mr. Adkisson's*, Defendants have repeatedly shown that they are not engaged in any lawful or legitimate business.

42.  Defendants, meanwhile, have little legitimate interest in going forward with an asset sale that the company's own founder (and majority owner) describes as "a badly executed hijack operation." Perez Decl., Ex. M.

**D.  Issuing an injunction serves the public interest.**

43.  Issuing a temporary restraining order clearly serves the public interest. "It is in the public interest to prevent defendants in civil cases from avoiding liability or payment of money judgments by secreting assets." *Consumer Opinion LLC v. Frankfort News Corp*, 2016 WL 6804607, at *5 (N.D. Cal. Nov. 17, 2016) (enjoining transferring of domain names to other registrars and/or deleting material from those websites); *Kyko*, 2013 WL 12173381, at *4 (finding that "preserving the status quo and preventing Defendants from transferring or dissipating funds will advance the public interest"). Without the temporary restraining order, Mr. Adkisson and other Epik customers face a significant risk that Defendants will dissipate Epik's assets as part of this transaction or any future transaction preventing customers from

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 13

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2

recovering their misappropriated funds. *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, SACV120463DOCMLGX, 2013 WL 12113414 (C.D. Cal. Feb. 11, 2013) ("freezing assets to preserve the possibility of an equitable remedy would clearly serve the public interest, as … disgorged profits will be used to make restitution to those people harmed by Defendants' unlawful actions.").

44. Absent a temporary injunction, Epik will continue misappropriating and comingling funds as it has been doing for years. It is also in the public interest to preserve the status quo and to protect Epik's assets from distribution for Adkisson and for other consumers who have fallen victim to Defendants' ongoing schemes. *Federal Sav. and Loan Corp. v. Ferm*, 1989 WL 88415, *5 (9th Cir. 1989) (finding evidence of fraud sufficient to show public interest in preventing further injury). Allowing Defendants to continue with this transaction, misappropriating funds, or dissipating assets serves no public interest.

E. **No bond is required.**

45. The court has discretion to dispense with the security requirement, or to request the party in whose favor a temporary restraining order is entered to post mere nominal security, where, as here, the likelihood of success on the merits tips in favor of a minimal bond or no bond at all. *California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.3d 1319, 1325-26 (9th Cir.), *amended on other grounds*, 775 F.3d 998 (9th Cir. 1985).

46. "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919(9th Cir.2003) (internal quotations omitted).

47. A strong likelihood of success on the merits also "tips in favor of a minimal bond or no bond at all." *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985.); *Tran v. Muhammad*, CV 20-01433-CJC(SKX), 2021 WL 681128 (C.D. Cal. Jan. 15, 2021) (finding no bond required in granting preliminary injunction to freeze assets given plaintiff "presented a strong likelihood of success on the merits"); *see also*

*JUUL Labs, Inc. v. Chou*, CV 21-3056 DSF (PDX), 2021 WL 4900374 (C.D. Cal. June 9, 2021) (setting $25,000 bond to freeze over $1 million in Defendants' assets).  Given Mr. Adkisson's strong likelihood of success on the merits, including Defendants' admission that he is entitled to the relief he seeks, there is little risk that Defendants will be "wrongfully enjoined."  This alone should jettison the need for a bond.

48. Defendants' representation that Mr. Adkisson has a "veto" over potential asset sale, a veto that Mr. Adkisson has undoubtedly exercised and will exercise if Defendants' representations are genuine, confirms that entering a TRO will not harm Defendants. "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Panyanouvong*, 2014 WL 2986507 (W.D. Wash. July 1, 2014) (finding "the risk that Defendants would suffer damages in the unlikely event of wrongful injunctive relief is minimal, as the injunction merely preserves Defendants' assets during the pendency of this litigation[.]").

### III.    TEMPORARY RESTRAINING ORDER

Now, therefore, it is hereby ORDERED as follows:

1. Defendants Epik Holdings, Inc., Epik, Inc., Masterbucks LLC, Robert W. Monster, and Brian Royce whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, their servants, agents, employees, or any other entity or person acting on their behalf or for their benefit, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily enjoined from: transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any asset, or any interest therein, wherever located, including outside the United States, that is owned by, controlled by, or in the actual or constructive possession of, in whole or in part, any defendant or any other person

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 15

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2

or entity, and is so held or controlled for the benefit of, or subject to access by, or belonging to, any named defendant in this action or any other corporation, partnership, trust, foundation, or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, any defendant, including, but not limited to, any assets held by or for any defendant in any account at any bank or savings and loan institution, or with any credit card processing agent, or any credit union, money market or mutual fund, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, or other financial institution or depository of any kind, whether within or outside the territorial United States, unless further allowed by order of this Court.

2. Defendants shall answer in full all discovery requests by the 30-day deadline imposed by Federal Rule of Civil Procedure 33(b)(2) and 34(b)(2)(A), and produce all documents with a privilege log by June 26, 2023. Such answers shall include production of all responsive, non-privileged documents on the same date along with a privilege log detailing any documents withheld on privilege grounds.

3. Mr. Adkisson is granted leave to conduct depositions of Defendant Monster, Defendant Royce, and Rule 30(b)(6) depositions of Epik Holdings, Inc., Epik, Inc., Masterbucks LLC. Such depositions shall last no longer than four hours apiece and shall not count towards the limits imposed by the federal rules. Counsel for defendants may object as to form only and for privilege; otherwise, counsel may not interject with interruptions, speaking objections, or any other non-privileged objection except "objection to form." The depositions and expedited discovery are necessary for the parties' presentation at the preliminary injunction. Defendants are ordered to make these witnesses available for their depositions during the month of July 2023.

4. A hearing on Mr. Adkisson's motion for preliminary injunction shall be scheduled after the parties have completed the depositions outlined above. The parties are to meet and confer about scheduling the hearing and mutually present dates to the Court in a joint status report due seven (7) days after the depositions have been completed.

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 16

162327120.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

5. No bond is required.

DATED this _____ day of _____, 2023.

_____
United States District Judge

Presented by:

s/ David A. Perez
David A. Perez, WSBA No. 43959
Christian W. Marcelo, WSBA No. 51193
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: DPerez@perkinscoie.com
E-mail: CMarcelo@perkinscoie.com

*Attorneys for Plaintiff Matthew Adkisson*

TEMPORARY RESTRAINING ORDER
(NO. 2:23-CV-00495 MJP) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that on May 31, 2023, I electronically filed the foregoing PROPOSED TEMPORARY RESTRAINING ORDER with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney(s) of record:

| | |
|---|---|
| Andrew Ramiro Escobar<br>SEYFARTH SHAW LLP (SEA)<br>999 THIRD AVE STE 4700<br>SEATTLE, WA 98104<br>206-946-4910<br>aescobar@seyfarth.com | Meryl Hulteng<br>SEYFARTH SHAW LLP (SEA)<br>999 THIRD AVE STE 4700<br>SEATTLE, WA 98104<br>206-946-4910<br>mhulteng@seyfarth.com |

I further certify that I caused service to be made on the following non-CM/ECF participants by the method(s) indicated:

| | |
|---|---|
| Robert Monster<br>*Pro Se*<br>&lt;rob@monsterventurepartners.com&gt; | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Postage Prepaid<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>_X_ Via Email<br>___ Other: _____ |

DATED this 31st day of May, 2023.

                                               *s/ David A. Perez*_____
                                               David A. Perez

CERTIFICATE OF SERVICE
(NO. 2:23-CV-00495 MJP) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

162327120.2